OPINION OF THE COURT

Per Curiam.

The issue is whether Seider v Roth (17 NY2d 111) should be overruled. The issue is not new for the court; it has been raised with frequency in the 12 years since the Seider case was first decided (see Donawitz v Danek, 42 NY2d 138; Neuman v Dunham, 39 NY2d 999; Simpson v Loehmann, 21 NY2d 305, mot for rearg den 21 NY2d 990). Considerations of stare decisis and institutional stability, absent compelling grounds to the contrary, require that this challenge, like the others, be rejected.
In this negligence action, plaintiffs seek recovery for personal injuries arising out of a collision between the automobile in which they were riding and one owned by defendant Dean Staples and driven by defendant Scott Staples. Defendants are residents of New Hampshire, where the accident took place. *891 Plaintiffs, although the driver plaintiff Robert Baden had exhibited a Florida operator’s license at the time of the accident, are apparently residents of New York.
Personal jurisdiction over defendants is not available in New York. Plaintiffs instead seek to obtain jurisdiction by attaching the insurance obligation owed defendants by their liability insurance carrier, St. Paul Insurance Company, a corporation doing business in New York. This procedure was, of course, first sanctioned in Seider v Roth (17 NY2d 111, 112, supra). Plaintiffs’ motion for attachment was therefore granted by Special Term, and the Appellate Division affirmed. Defendants appeal.
Defendants argue principally that, in light of Shaffer v Heitner (433 US 186), the Seider attachment procedure is unconstitutional. They argue that since the Seider holding was premised on Harris v Balk (198 US 215), Seider must fall with Harris, which was overruled by the Shaffer case.
In Simpson v Loehmann (21 NY2d 305, 310, supra), in which the rationale for the Seider rule was more fully developed, this court cited the Harris case as support for the constitutionality of the procedure. But the court, through Chief Judge Fuld, recognized and indeed foresaw the emergence of more flexible jurisdictional principles for constitutional purposes (id., p 311). The opinion in the Shaffer case parallels this analysis; certainly the Supreme Court has not repudiated it (see Shaffer v Heitner, 433 US 186, esp pp 207-212, supra; see, also, Silberman, Commentaries on Shaffer v Heitner, End of an Era, 53 NYU L Rev 33, 96-97). The Seider rule therefore satisfies the jurisdictional standards set forth in the Shaffer case.
Indeed, two appellate courts have written thoughtful opinions holding that the Seider doctrine survives the constitutional principles expressed in the Shaffer case (O’Connor v Lee-Hy Paving Corp., 579 F2d 194, 197-202 [Friendly, J.]; Alford v McGaw, 61 AD2d 504, 506-509, app dsmd 45 NY2d 776). The gist of the analysis is that the primary risks and burdens of defending a Seidfer-type action rest on the insurer, who does business in New York, and over whom even personal jurisdiction may, of course, be obtained. The burdens on the nonresident insured, although existent, are not sufficient to prevent, constitutionally, the New York courts from adjudicating a dispute principally between a New York plaintiff and an insurance company doing business in New York.
*892 Remaining is the basic policy question: should the much-criticized Seider case be overruled? The merits of the rule are still in dispute (compare, e.g., Donawitz v Danek, 42 NY2d 138, 147-151 [concurring opn], supra, with id., pp 151-153 [dissenting opn]). Whatever the deficiencies in its logical foundation, application of the rule does not appear to have worked extensive injustice during its 12-year history. As has been noted, should injustice there be, the Legislature is free to change the rule (see Donawitz v Danek, supra, 142, and 149-150 [concurring opn]; Simpson v Loehmann, 21 NY2d 305, 312, supra).
"Distinctions in the application and withholding of stare decisis require a nice delicacy and judicial self-restraint. At the root of the techniques must be a humbling assumption, often true, that no particular court as it is then constituted possesses a wisdom surpassing that of its predecessors. Without this assumption there is jurisprudential anarchy” (People v Hobson, 39 NY2d 479, 488).
The Seider rule well illustrates the principle. It provoked sharp disagreement at its inception; it is still the subject of controversy. The balance of those in support and in opposition to the rule may have shifted, as it may shift again. Yet, if such shifts are reflected in decisional law, stability is lost, and to no commensurate gain. The practical effect of the rule is so insignificant that, in this instance, there is validity in the aphorism, always to be charily applied, that it is more important that the law be settled than that it be settled "correctly”.
Stare decisis, of course, is necessary only because Judges might disagree with the analysis and conclusion of their predecessors. Were there always agreement with the judgments and reasonings of the past, stare decisis would be a superfluous judicial economy doctrine enshrouded in the mysteries of a Latin phrase. But stare decisis is more than that. It is a doctrine born of recognition that judicial chaos would result if every judgment of the past were overturned because it fails to persuade the Judges of the present. True, there may be instances where strict adherence to precedent would be folly. But mere disagreement with the conclusions of the past, absent compelling reasons or changes in circumstances, cannot serve as a sufficient basis for abandoning what are for the transient present considered to be errors of the past, lest courts of the future consider the abandonment to be the error, thus repeating the process and compounding the uncertainty.
*893 Not enough has appeared to have happened in the last 12 years to make the Seider decision demonstrably more wrong, or more right, than it was when originally decided. Its merit is still debated, and will undoubtedly continue to be debated no matter how settled the rule ultimately becomes. But the debates have not produced, and are not likely to, the "cogent reasons” necessary to abandon a precedent that has evidently wrought no great injustice (see Matter of Eckart, 39 NY2d 493, 499; see, also, Simpson v Loehmann, 21 NY2d 305, 314-316 [concurring opn per Breitel, J.], supra).
The modern doctrine of stare decisis with the flexibility essential if it is to be a socially useful one has never been better stated than by Chief Judge Cardozo in his Nature of the Judicial Process (Cardozo, Nature of the Judicial Process, esp pp 149-152). His teachings of a half century ago bear constant reminder.
Accordingly, the order of the Appellate Division should be affirmed, with costs.