No. 78–410.  LEE–HY PAVING CORP. ET AL. *v.* O'CONNOR, ADMINISTRATRIX.  C. A. 2d Cir.  Certiorari denied.

MR. JUSTICE POWELL, with whom MR. JUSTICE BLACKMUN joins, dissenting.

This case presents the question whether the Due Process Clause permits a tort plaintiff to obtain jurisdiction in New York over a defendant whose sole contact with the State arises from the defendant's contract for indemnity with a company that does business in New York.[1]  The case presents an issue of considerable importance, with troublesome ramifications in the spacious arena of personal injury litigation. Moreover, it seems to me that the rationale of our recent decision in *Shaffer* v. *Heitner,* 433 U. S. 186 (1977), is at odds with the decision of the Court of Appeals here.  I therefore would grant certiorari and set the case for argument.

---

[1] Along with this case, the Court of Appeals decided two other cases with respect to which certiorari is sought: *Gillespie* v. *Schwartz,* No. 78–268, and *Boston Hospital for Women* v. *Schwartz,* No. 78–361.  In each of these cases, residents of other States were sued in New York for torts occurring outside of New York.  The sole basis for jurisdiction in each is the insurance policy of the defendant, issued by a company doing business in New York.  Although I write only with respect to this case, the reasons stated in my opinion here would support the granting of certiorari in all three cases.

The petitioners are residents of Virginia. While working for petitioner Lee-Hy Paving Corp. (Lee-Hy) in Virginia, the respondent's decedent (a New York resident) was killed when Lee-Hy's grader, operated by petitioner Clem, struck him near Richmond, Va. The respondent instituted this suit in the District Court for the Eastern District of New York as executrix for her husband's estate, claiming damages for the wrongful death of her husband. In order to obtain jurisdiction over the petitioners, who are conceded to have no other connection with New York, the respondent sought and obtained under New York law an order attaching the contractual obligations of two insurance companies doing business in New York to defend and indemnify Lee-Hy. The District Court denied petitioners' motion to vacate the attachment and dismiss the suit. Acknowledging that there was a "substantial ground for difference of opinion" on the question of law, and that the issue was an important one, the District Court certified an appeal to the Court of Appeals under 28 U. S. C. § 1292 (b).

The Second Circuit affirmed. 579 F. 2d 194 (1978). The court based its ruling on the theory of *quasi in rem* jurisdiction adopted by the New York Court of Appeals in *Seider* v. *Roth,* 17 N. Y. 2d 111, 216 N. E. 2d 312 (1966). In *Seider,* personal jurisdiction was predicated on the fiction that the insurance company's obligation to indemnify the policyholder was a "debt" that the plaintiff in a negligence suit could attach as a "*res.*" In *Minichiello* v. *Rosenberg,* 410 F. 2d 106 (1968), the Second Circuit affirmed the constitutionality of *Seider* jurisdiction, reasoning that the New York Court of Appeals had created judicially a direct-action law similar to the Louisiana statute held constitutional in *Watson* v. *Employers Liability Assurance Corp.,* 348 U. S. 66 (1954). The *Minichiello* court recognized that the *Seider* doctrine differed in one important respect from the Louisiana direct-action statute of *Watson:* Under *Seider,* there was no requirement that the tort for

which redress was sought occur in the State asserting jurisdiction. Despite the Court's emphasis in *Watson* on the location of the tort, the Second Circuit in *Minichiello* ruled that New York's interest in protecting its residents and providing them with a ready means of suing foreign tortfeasors was sufficient to justify *Seider* jurisdiction under the Due Process Clause.[2]

In the case at bar, the petitioners unsuccessfully urged reconsideration of *Minichiello* on the ground that the *Seider* doctrine had been undermined by *Shaffer* v. *Heitner, supra.* The Court of Appeals viewed the "overriding teaching of *Shaffer*" as requiring courts to look to the "realities" of the asserted grounds for jurisdiction. As far as the insurance companies were concerned, the court found no unfairness in their being subject to the jurisdiction of New York courts, as they do business in New York. The court thought that this was true even though often it is more expensive (and therefore more costly to insurers) to defend a lawsuit brought several hundred miles from the site of the accident, the residence of the defendants, and the location of the witnesses. The court reached a similar conclusion concerning the fairness of a suit brought in New York against "the nominal defendants" (the petitioners here). The court thought it ironical that they should complain even though they "will not pay the judgment, nor manage the defense." 579 F. 2d, at 201.[3]

---

[2] In his persuasive dissent in *Minichiello*, Judge Anderson argued that *Watson* was based primarily on a State's strong interest in having jurisdiction with respect to tortious activity within the State's borders. See *Minichiello*, 410 F. 2d, at 113–117. Thus, Judge Anderson concluded that "statutes asserting jurisdiction of the state where the accident occurred qualify as due process, whereas the assertion of jurisdiction by the state of the plaintiff's residence does not." *Id.,* at 116 (footnote omitted).

[3] The court did note that no "other state could constitutionally give collateral estoppel effect to a *Seider* judgment." Although I agree that no such effect should be allowed, the court's opinion in this regard is dictum that may or may not be followed in other jurisdictions.

I find the Court of Appeals' decision disturbing. Although the insurance companies' contact with New York is important in determining whether it is fair for the New York courts to assert their jurisdiction, our decision in *Watson* indicated that the difficulties of defending a negligence case far from the place of the injury should be taken into account under the Due Process Clause. See *Watson* v. *Employers Liability Assurance Corp., supra,* at 72. Often these difficulties are substantial. It is routine procedure for the judge and jury [4] to view the scene of the accident, often more than once. Jurors drawn from the venue of the accident may be better able to understand testimony pertaining to local conditions and geography. In short, many of the factors traditionally considered under the doctrine of *forum non conveniens*—itself a doctrine based on fairness—may also pertain to the fairness of a court hundreds of miles from the location of an accident exercising its jurisdiction over the parties to the resulting tort suit. [5]

Moreover, the Court of Appeals' reference to the petitioners as "nominal defendants" disregards many of the "realities" that bear upon whether an alleged tortfeasor, sued in a jurisdiction remote from his home and the location of the accident, is denied the fairness required by the Due Process Clause. It is novel doctrine, at least for me, to refer to the interest of defendants in negligence actions as "nominal" merely because they have insurance. In this case, for example, petitioners will be summoned to appear in a court in New York, and will be required to participate in the defense of the suit in essentially the same manner as if it had been brought in Virginia. They are required to do this 300 miles from their residences and place of business, confronted with all of the uncertainties caused by delays that often stretch a trial over several days or even weeks.

---

[4] See E. Cleary, McCormick on Evidence § 216 (2d ed. 1972).

[5] See *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 507–509 (1947).

1038

In addition to the problems posed for both the insurer and the insured by litigation located hundreds of miles from the scene of the tort, there is the ever-present possibility of a second suit in the jurisdiction where the accident occurred. The opinion of the Court of Appeals seems to assume, by its reference to petitioners as nominal defendants, that the only real parties in interest are the insurance companies. To be sure, a judgment against the petitioners in the New York courts cannot exceed the amount of indemnification provided under the insurance policies. But judgments for civil damages, especially in recent years, often have exceeded insured limits. In this case, for example, if respondent wins a judgment that exhausts the obligation of the insurers, the respondent will be free to sue petitioners in Virginia where they would be forced to go through a second trial—possibly without the benefit of lawyers supplied by the insurance companies. Moreover, as every litigation lawyer knows, the hazards of a second trial may exceed those of the first; witnesses seldom tell their story precisely the same way twice, and often new evidence is introduced. To say that the legal rights of insured defendants are not being adjudicated, despite their substantial role in the defense of the suit and despite the potential loss of their right to the insurance company's legal representation, begs the question: To what extent must an individual be involved in the litigation before the fundamental-fairness requirements of *International Shoe Co.* v. *Washington,* 326 U. S. 310 (1945), are applicable?

In sum, the judicially created *Seider* doctrine raises serious questions of due process. To me it does not appear consonant with the standards of fairness enunciated in *International Shoe Co.* v. *Washington,* and strongly reiterated in *Shaffer* v. *Heitner.* The issues presented are of concern to insurers and insureds in every State, as well as to state legislators responsible for the fairness of long-arm statutes. The case merits plenary consideration by this Court.