Lois Ranz, as Administratrix of the Estate of Arthur Ranz, Deceased, et al., Respondents, v Louis Sposato, Jr., et al., Appellants.

First Department, December 9, 1980

APPEARANCES OF COUNSEL

*William F. Larkin* of counsel *(Thomas J. Flood,* attorney), for appellants.

*Joel K. Asarch* of counsel *(Benjamin Asarch* with him on the brief; *Asarch & Asarch,* attorneys), for respondents.

OPINION OF THE COURT

Bloom, J.

This appeal confronts us with another facet of the unfinished business precipitated by *Rush v Savchuk* (444 US 320). *Rush* held that a Minnesota garnishment statute which embodied the rule laid down in *Seider v Roth* (17 NY2d 111), was unconstitutional because it permitted the exercise of State jurisdiction without the necessity of establishing that the defendant had such minimal contacts with

the forum State so as to insure that traditional notions of substantial justice and fair play were not infringed by the assumption of State jurisdiction *(International Shoe Co. v Washington,* 326 US 310).

The facts are comparatively simple. Arthur Ranz, plaintiff's intestate, was a resident of the State of New York. The Sposatos are residents of Pennsylvania. On August 29, 1975, Arthur Ranz was the occupant of a vehicle owned by Robert Ranz. The Ranz vehicle, while in Pennsylvania, collided with a vehicle owned by Louis Sposato, Sr., and operated by Louis Sposato, Jr., with the consent and permission of his father. By consequence of the accident Arthur Ranz died.

Sposato was insured by Allstate Insurance Company. On December 12, 1975, somewhat less than four months after the happening of the accident, and well within the statutory period of limitations both in New York and Pennsylvania, plaintiffs obtained an order in this State attaching the contractual obligation of Allstate to appear, defend and to pay any judgment procured by plaintiffs against the Sposatos to the limits of the policy issued by it under the authority of *Seider v Roth* (17 NY2d 111, *supra).* Service of the summons and complaint in this action was then effected upon the Sposatos in Pennsylvania.

Issue was joined later the same month. *No motion was made by defendants to dismiss for lack of jurisdiction nor was the jurisdictional issue preserved by the responsive pleading* as permitted by CPLR 3211 (subds [a], [e]).

After the Supreme Court of the United States decided *Rush (supra),* defendants, for the first time, raised the issue of jurisdiction by the instant motion to dismiss. Recognizing that CPLR 3211 (subd [e]) provides that a motion to dismiss upon the ground that the court does not have jurisdiction over the person of the defendant "is waived if a party moves on any of the grounds set forth in subdivision (a) without raising such objection or *if, having made no objection under subdivision (a), he does not raise such objection in the responsive pleading"* (emphasis supplied), defendants, in the endeavor to avoid the consequences of this provision, argued, most energetically, that the jurisdiction here contested is subject matter jurisdiction which may not

be conferred upon the court even by consent or stipulation and which is subject to attack at any time *(Robinson v Oceanic Steam Nav. Co.,* 112 NY 315; *Eckert v Eckert,* 34 AD2d 684; *Revona Realty Corp. v Wasserman,* 4 AD2d 444; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3211.10).

Special Term denied the motion to dismiss. We affirm. In so doing we do not reach any of the constitutional problems posed by *Rush (supra).*

Prior to the adoption of the CPLR, it was axiomatic that where service of process was made on a nondomiciliary under authority of a warrant of attachment the defendant was confronted with three options. He could default. In that event, the jurisdiction of the court was limited to the property seized *(Heilbrunn v Kellogg,* 253 App Div 753, affd 279 NY 773; *Schwinger v Hickok,* 53 NY 280). He could, by motion where that practice was permitted (Civ Prac Act, § 237-a, subd 1) or by answer *(Hassler v Shaw,* 271 US 195) in the event that no such motion was permitted, raise the question. However raised, the issue was preserved if seasonably presented *(Cheshire Nat. Bank v Jaynes,* 224 Mass 14). In this State it was expressly preserved by subdivision 4 of section 237-a of the Civil Practice Act. Where, however, defendant appeared without reservation and sought to defend upon the merits, his appearance was general and subjected him to in personam jurisdiction (4 Carmody-Wait 2d, NY Civ Prac § 26:42). In so doing, he rendered himself potentially liable for the full amount in suit. The CPLR altered the law only to the extent that it abolished the special appearance, permitting the objection to jurisdiction to be taken either by motion or by reservation contained in the answer. If a defendant availed himself of neither alternative, his appearance was a general or unconditional appearance.

*Seider (supra)* created tensions between the insurer and insured where the amount in suit exceeded the amount of the policy. Since an insurer's potential liability was fixed by the face amount of the policy, it could not be damaged by undertaking defense of the litigation, regardless of the result. Hence, it was always intent upon appearing and defending. However, an insured in such a situation, by his

general appearance, risked a recovery in excess of the face amount of the policy—a recovery for which he might be personally liable. Hence, in such case he might be loath to appear. Not until *Simpson v Loehmann* (21 NY2d 305, mot for rearg den 21 NY2d 990), was this area of conflict set to rest. In that case reconsideration of the *Seider* doctrine was sought. In its original holding (reaffd on rearg), the Court of Appeals noted (p 310), almost in passing, that "It is, of course, hardly necessary to add that neither the *Seider* decision nor the present one purports to expand the basis for *in personam* jurisdiction in view of the fact that the recovery is necessarily limited to the value of the asset attached, that is, the liability insurance policy" (emphasis supplied).

The limitation imposed by the court in *Simpson (supra)* impelled the Judicial Conference to take another look at CPLR 320, which governs appearances. In its Sixth Annual Report to the Legislature (Fifteenth Ann Report of NY Judicial Conference, 1970, p A109) it noted that, under the Civil Practice Act and its successor, the Civil Practice Law and Rules, limited appearances were prohibited, with certain special Judge-created exceptions. To bring the law into conformity with the decision in *Simpson (supra)*, it suggested that *Seider (supra)* and *Simpson*, read together, required the adoption of a limited appearance rule to overcome,

"the possible conflict of interest between the insurer and the insured in view of the provisions of Rule 320 (c). The insurer justifiably might wish to proceed with the defense on the merits in order to protect its economic interest in the litigation—yet, also justifiably, the insured may wish to avoid an appearance in New York which would expose him to an in personam jurisdiction and possibly to liability in excess of policy limits if he should proceed with the defense.

"The urgency of the appearance problem was further accentuated when a federal district court in February 1968 refused to follow the *Seider* rule principally on the ground of defendant's apparent inability to make a limited appearance. (Podolsky v. Devinney, 281 F. Supp. 488 (1968)). In the federal court's view the compulsion of submitting to personal jurisdiction or risking a default amounted to deprivation of property without due process of law.

"The New York Court of Appeals finally, in April 1968, responded to the constitutional challenge of the no-limited-appearance-rule, as applied to a *Seider*-situation, in a memorandum decision denying a motion for reargument in the case of *Simpson v. Loehmann*, 21 N.Y. 2d 990 (April 1968). Notwithstanding the wording of Rule 320 (c) and the declared intent of the draftsmen to bar a limited appearance, the court held that the recovery in this sort of case would be limited to the face value of the attached insurance policy * * *

"The policy considerations for and against a limited appearance are more closely balanced in other situations covered by CPLR 314. Thus, it may be desirable to encourage the adjustment of all the claims of the parties in a matrimonial action even if they are not directly related to the matrimonial relationship. Likewise, when defendant's property rights in the state are the direct object of the suit, it may be fair and reasonable to permit the adjudication of personal claims at least if they are related. See Frumer and Graziano, Jurisdictional Dilemma of the Nonresident Defendant in New York—A Proposed Solution, 19 Fordham L. Rev. 125, 142-43 (1950). Cf. Restatement, Judgments § 40 (1942). If plaintiff uses his claim as a lever to obtain jurisdiction with respect to claims which are wholly unrelated to the forum and, in the interest of fairness and substantial justice, should be heard elsewhere, proposed new CPLR § 327, if enacted, would provide an effective control device to prevent abuse.

"In conclusion it should be noted that the proposed amendment of Rule 320 (c) operates automatically. No notice of a limited appearance would be required. The automatic operation of the amendment parallels CPLR 302 (b) which, notwithstanding defendant's appearance, automatically restricts a plaintiff to the prosecution of claims covered by the long-arm statute. See Homburger and Laufer, Supra at 388-390". (Fifteenth Ann Report of NY Judicial Conference, 1970, pp A111-A113.)

It added only that, in the interests of fair play, the limited appearance rule should be made applicable to all instances in which jurisdiction was obtained initially through a warrant of attachment.

Despite the somewhat inartistic use of language both in the report and in the amended CPLR 320 (subd [c]), it is plain that the purpose of the amendment was not to alter the nature of the jurisdiction obtained, but rather to limit the liability flowing from an unconditional appearance in response to a warrant of attachment. Notwithstanding the limitation of liability to the face amount of the policy, the underlying jurisdiction remained personal if the appearance by defendant was unconditional.

Accordingly, we hold that the jurisdiction here involved is jurisdiction of the person and not subject matter jurisdiction; and that defendants, by their failure to raise the issue either by motion or by answer, waived the initial defect in jurisdiction under CPLR 3211 (subd [e]). Hence, the right now to move to dismiss has vanished (*Grenz v McLaughlin*, NYLJ, Oct. 16, 1980, p 11, col 1 [App Term, 2nd Dept]).

We are not unaware that this court recently dismissed a case arising out of a *Seider*-type attachment (*Gager v White*, 78 AD2d 617). Our ruling does not conflict with that holding. In *Gager* defendant reserved the jurisdictional question by his answer. Accordingly, and until disposition was made of the issue, jurisdiction rested solely on the warrant of attachment, a jurisdiction which *Rush (supra)* found to be constitutionally defective. Here, however, jurisdiction is founded on the submission by defendants of their persons to the jurisdiction of this State as reflected by their unconditional, albeit limited, appearance. Since tort actions are transitory and may be brought in any State where jurisdiction may be obtained (*Robinson v Oceanic Steam Nav. Co.*, 112 NY 315; *Gregonis v Philadelphia & Reading Coal & Iron Co.*, 235 NY 152; *Crashley v Press Pub. Co.*, 179 NY 27), and defendants have submitted themselves to the jurisdiction of this State, the endeavor now to breathe life into a waived jurisdictional defect must fail.

The issue here involved affects many who find themselves similarly situated. It cannot be finally and authoritatively disposed of until passed upon by the Court of Appeals. Since leave to appeal may be granted only by us (CPLR 5602, subd [b], par 1), upon a question properly certified (CPLR 5713) we hereby grant such leave, *sua sponte*, in order to facilitate a speedy final and authoritative disposition.

Accordingly, the order of the Supreme Court, New York County (EGETH, J.), entered April 22, 1980, denying defendants' motion for summary judgment and dismissal of the complaint for lack of jurisdiction is affirmed, without costs.

ROSS, J. P. (dissenting). I do not believe that a sufficient predicate existed on which to base personal jurisdiction over these defendants. The defendants were neither actually nor constructively present in the forum State. Since the courts of this State never obtained jurisdiction, a failure to affirmatively assert this objection in a responsible pleading or by motion should not be deemed a waiver.

The singular basis for exercising jurisdiction over the nominal defendants, the Sposatos, was the attachment of their automobile liability insurance policy pursuant to *Seider v Roth* (17 NY2d 111). The theorized presence of this *res*, it is argued, was the conduit through which jurisdiction could be asserted. My colleagues conclude, and in my opinion incorrectly, that this underlying jurisdiction was personal. The nonresident defendants were not exposed to even the slightest personal liability. CPLR 320, which defines the circumstances under which the courts of this State can exercise personal jurisdiction over a nonresident, does not include within its ambit the class of defendants in which the Sposatos are now mired. In fact, subdivision (c) of this section specifically states that an appearance by a nonresident, sued for an out-of-State accident, where the only basis for jurisdiction is the attachment of his liability insurance policy does not confer personal jurisdiction.

Additionally, the presence of these defendants in this State remained a fiction. The defendants had little, if any, contacts with New York and certainly not a sufficient quantity or quality of contacts so as to meet the minimum requirements of *International Shoe Co. v Washington* (326 US 310). As in most *Seider*-type actions, the Sposatos' only contact with New York, the forum State, was through their insurer doing business here. A myriad of other factors militate against jurisdiction in New York. "The intangible policy obligations were not in [this] state by the voluntary choice of the insured; other forums existed in which the

controversy could have been fully adjudicated; it was likely that the law of another state would have been applicable; and New York's assumption of jurisdiction may have created a risk of multiple liability. The availability of evidence and the expectations of the parties as to the place of suit also pointed to jurisdictions other than New York" (Stein, Jurisdiction by Attachment of Liability Insurance, 43 NYU L Rev 1075, 1116-1117).

Moreover, the United States Supreme Court declared that *Seider*-type attachments were not immune from due process requirements and that any assertion of jurisdiction must conform to the minimum standards of *International Shoe (supra)*. Without the presence of such minimum contacts, the court held that the assertion of jurisdiction, through the device of attaching the liability insurer's duty to defend and indemnify its insured, conflicted with due process standards. By this holding, the Supreme Court invalidated the jurisdictional predicate over a *Seider*-type cause of action *(Rush v Savchuk*, 444 US 320). In emphasizing the contacts approach, the Supreme Court declared that: "Because the party with forum contacts can only be reached through the out-of-state party, the question of jurisdiction over the nonresident cannot be ignored." *(Rush v Savchuk, supra*, at p 331.)

Indeed, this question of jurisdiction is central to the problem confronting us. It is obvious from the decisions that predated *Rush (supra)*, and the applicable sections of the CPLR, that the defendants were never exposed to any personal liability, as there was no personal jurisdiction obtained over them. The sole basis for any action against them in this State was the concept created by *Seider (supra)*. When that concept was found to be unconstitutional, the *quasi in rem* jurisdiction of this State no longer existed in any action brought under *Seider (supra)*. Personal jurisdiction never having been obtained over the defendants, the decision in *Rush (supra)*, in no manner affected the defendants' personal position.

The majority would take a question of *quasi in rem* jurisdiction and treat it as one of *personal jurisdiction*.

Institution of an action in which no valid jurisdiction was

obtained invalidates that lawsuit *ab initio*. Since jurisdiction never existed over the defendants, this objection may be asserted at any time.

SILVERMAN and YESAWICH, JJ., concur with BLOOM, J.; ROSS, J. P., and MARKEWICH, J., dissent in an opinion by ROSS, J. P.

Order, Supreme Court, New York County, entered on April 22, 1980, affirmed, without costs and without disbursements.

[See 79 AD2d 594.]