LORETTA KALMAN et al., Respondents, v HENRY A. NEUMAN et al., Appellants.

Second Department, April 13, 1981

APPEARANCES OF COUNSEL

*McCarthy, Marshall & Director (Gerald Director* and *Herbert Minster* of counsel), for appellants.
*Nathaniel M. Swergold* for respondents.

OPINION OF THE COURT

LAZER, J. P.
This appeal is another in the continuous series deriving

from the Supreme Court decision in *Rush v Savchuk* (444 US 320), which overthrew *Seider v Roth* (17 NY2d 111) with consequences as yet not fully fathomed. Felicitously, the instant circumstances permit us the discretion of arriving at a just result without the destruction of plaintiffs' lawsuit and without doing violence to the single precedential signal from the Court of Appeals as to the direction to be taken on *Rush v Savchuk* dismissal motions.

The case involves an accident which occurred in Bear Creek, Pennsylvania, on August 2, 1974 when an automobile occupied by the Queens County residents who are the current plaintiffs collided with a car owned by one Pennsylvania resident and driven by another. On October 3, 1975 plaintiffs began the process of instituting suit against the Pennsylvania defendants by obtaining an ex parte order of attachment from Special Term in Queens County commanding the Sheriff to levy upon the contractual obligation of defendants' insurer, Nationwide Mutual Insurance Company, to defend and indemnify defendants within the State of New York. The Sheriff then levied by serving the order on Nationwide and subsequently making the initial return to the Clerk of Queens County on October 16, 1975, reporting that no certificate had been received as to any assets. On October 29, 1975 the Sheriff filed a supplemental return in which he referred to a "certificate" received from Nationwide's attorneys. The "certificate" consisted of a letter addressed to the Sheriff on the stationery of the law offices of Simone and Brant, signed by B. Daniel Winn as regional claims attorney for Nationwide. The pertinent portion of the letter declared:

"This is to certify that we insure Henry A. Newman [*sic*], and afforded coverage to his vehicle involved in this accident, with bodily injury limits of * * * each person and * * * each accident and * * * property damage.

"I understand this is the information you require for your records in connection with the attachment served on Nationwide.

"I am sending a copy of this letter to [the] attorney * * * who represents the plaintiff".

The order of attachment was never extended beyond the 90-day expiration time set forth in CPLR 6214 (subd [e]) and defendants subsequently interposed an answer in which they asserted the following affirmative defense relating to jurisdiction:

"AS AND FOR A SEPARATE, COMPLETE & DISTINCT AFFIRMATIVE DEFENSE, THE DEFTS, HENRY A. NEUMAN & MARCELLE N. FERRAR, ALLEGE:

"1) That the Court lacks jurisdiction over the person of the answering defendants,

"2) That the damages, if any, which the plaintiffs are limited to, notwithstanding and [sic] ad damnum clause of the complaint herein, are no greater than the value of any contractual [sic] obligation of the liability carrier of the defendants herein.

"3) That any appearances made by the defendants in connection with the defense of this lawsuit by them shall not be deemed a waiver on their part of lack of personal jurisdiction over them by the Court herein."

Almost two and one-half years later, on March 15, 1978, the defendants moved to dismiss the complaint on the grounds of lack of personal jurisdiction and forum non conveniens. The motion was granted and upon reargument the court adhered to its original decision in an order dated June 7, 1978. The plaintiffs appealed from the latter order and in Kalman v Neuman (71 AD2d 996) we reversed Special Term, holding that the constitutionality of Seider v Roth (17 NY2d 111, supra) as a jurisdictional predicate had been sustained by the Court of Appeals in Baden v Staples (45 NY2d 889). We also found that plaintiffs' possible failure to perfect or procure an extension of the levy within the 90 days provided in CPLR 6214 (subd [e]) might constitute a jurisdictional defect, but since the record before us was insufficient to make such a factual determination, we remanded to Special Term for further proceedings to determine whether there were adequate grounds present to grant an extension of time to perfect nunc pro tunc and whether, therefore, defendants' motion to dismiss should have been denied. We also granted plaintiffs leave to apply for such extension if they were so advised.

In December of 1979, plaintiffs moved for an order pursuant to CPLR 6214 to obtain an extension of time within which to file a special proceeding to compel payment, delivery or transfer of property in the hands of defendants' insurer. By order dated February 13, 1980, the first of the two orders involved on these appeals, Special Term determined that the Sheriff had made due levy upon, and therefore properly had custody of, the "asset", i.e., defendants' insurer's obligation to defend and indemnify, and that no extension of time to commence a special proceeding to compel payment, delivery or transfer was necessary (102 Misc 2d 662). However, Special Term did hold, in the alternative, that if plaintiffs deemed it necessary, their time to commence a special proceeding against the garnishee would be extended *nunc pro tunc*, as would the order of attachment, subject to the rights of any intervening lienors. Finally, Special Term refused to dismiss the complaint for lack of "in-rem" jurisdiction "as a matter of judicial policy and so as to prevent unfairness or undue hardship to plaintiffs".

Meanwhile, on January 21, 1980, the Supreme Court handed down its *Seider*-shattering opinion in *Rush v Savchuk* (444 US 320, *supra*), and on January 28, 1980 defendants moved to dismiss the complaint on the grounds the court lacked "in rem" jurisdiction relating to them. The motion was denied on constraint of the February 13, 1980 order which had decided that defendants' insurer was obligated to defend and indemnify.

On this appeal, the defendants urge that they are entitled to reversal and dismissal of the action because the affirmative defense of lack of jurisdiction was specifically raised in their answer and they have maintained its applicability throughout the litigation. They also contend that the plaintiffs have been aware of the jurisdictional defense at all times, that they cannot now assert surprise, and that they could not have justifiably relied on the validity of *Seider*-based jurisdiction. The conclusion posited is that the *Rush v Savchuk* ruling that *Seider*-based jurisdiction is a nullity should be applied retroactively to this action. Plaintiffs, whose injury claims may be fatally affected by retroactive application of *Rush v Savchuk (supra)* because

the Pennsylvania Statute of Limitations for negligence actions has long since expired, argue in response that retroactive application should be determined on a case-by-case basis and that their reliance on the jurisdictional basis provided by *Seider v Roth (supra)* was justifiable.

Resolution of these conflicting contentions requires a brief review of the developments which have led to the current controversy over the status of actions based on *Seider v Roth* quasi in rem jurisdiction. In *Seider v Roth* (17 NY2d 111, *supra)*, in 1966, the Court of Appeals held that, in a personal injury action brought in New York against a nonresident defendant, the defendant's liability insurer's contractual obligation to defend and indemnify the defendant constituted a debt subject to attachment. Such attachment, which could be accomplished where the insurer was present or doing business in New York, could then form the basis for quasi in rem, but not personal jurisdiction over the nonresident defendant, his liability being limited to the face value of the policy (see *Simpson v Loehmann*, 21 NY2d 305, 310, mot for rearg den 21 NY2d 990). In *Simpson (supra*, p 311), the Court of Appeals explicitly declared that *Seider*-based jurisdiction does not offend the due process guarantees of the United States or New York Constitutions. By 1976, however, in *Neuman v Dunham* (39 NY2d 999, 1000), the court's reaffirmance of *Seider* was "on the ground of *stare decisis* alone", and only a year later in *Donawitz v Danek* (42 NY2d 138), it restricted *Seider* by holding it unavailable for use by nonresident plaintiffs. The *Donawitz* court indicated that it was aware of the criticism of the *Seider* doctrine and the grave constitutional doubts which had been expressed about it. Nevertheless, it refused to overrule the case because of considerations of institutional stability and *stare decisis*, commenting that "it would be scandalous for us to abandon it" in view of continued recent adherence to it (42 NY2d, at p 142).

Ten days after the *Donawitz* decision the Supreme Court decided *Shaffer v Heitner* (433 US 186), holding that the requirements of " 'fair play and substantial justice' " for the validity of in personam jurisdiction apply to jurisdiction in rem as well and are measured by the minimum contacts test of *International Shoe Co. v Washington* (326 US

310). The court noted (pp 208-209) that its holding might have some further reverberations:

"It appears, therefore, that jurisdiction over many types of actions which now are or might be brought *in rem* would not be affected by a holding that any assertion of state-court jurisdiction must satisfy the *International Shoe* standard. For the type of *quasi in rem* action typified by *Harris v. Balk* [198 US 215] and the present case, however, accepting the proposed analysis would result in significant change. These are cases where the property which now serves as the basis for state-court jurisdiction is completely unrelated to the plaintiff's cause of action. Thus, although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction. If those other ties did not exist, cases over which the State is now thought to have jurisdiction could not be brought in that forum."

Needless to say, *Shaffer (supra)* led to speculation that *Seider*-based jurisdiction could not long survive (see, e.g., Siegel, New York Practice, § 105; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C5201:7, 1980-1981 Supp, pp 9-13). Nevertheless, despite at least one judicial attempt to extinguish it (see *Wallace v Target Store*, 92 Misc 2d 454), *Seider* resisted extinction. In *O'Connor v Lee-Hy Paving Corp.* (579 F2d 194, cert den 439 US 1034 [POWEL & BLACKMUN, JJ., dissenting], reh den 441 US 918), the Court of Appeals for the Second Circuit, relying on a pre-*Shaffer* decision *(Minichiello v Rosenberg*, 410 F2d 106, adhered to *en banc* 410 F2d 117, cert den 396 US 844, reh den 396 US 949), found that *Seider*-based jurisdiction did not offend due process even as defined in *Shaffer* because (1) as to the insurer, the requirement that it be present or doing business in New York provides a basis for the exercise of in personam (and, a fortiori, quasi in rem) jurisdiction, and (2) as to the nominal defendant, it had become apparent that a judgment against him would not be given collateral estoppel effect in any other State, since any *Seider*-based action is, in reality, a direct action against the insurer *(O'Connor v Lee-Hy Paving Corp., supra,* p 201). *O'Connor* was fol-

lowed in our own Court of Appeals by *Baden v Staples* (45 NY2d 889, *supra)* which again upheld the constitutionality of the *Seider* doctrine, partially on the basis of *O'Connor.* The court noted that in spite of the criticism leveled against *Seider,* since its inception the doctrine had neither worked any great injustice nor been repealed by the Legislature.

The *coup de grace* finally came in January of 1980 when the Supreme Court explicitly held *Seider*-based jurisdiction unconstitutional in *Rush v Savchuk* (444 US 320, *supra),* choosing a Minnesota case with which to do so. In *Rush,* the court (p 327) emphasized *Shaffer's* mandate that in "determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.' " The court found in the case before it (the facts of which are similar to those in the action at bar), that (1) "the fact that the defendant's insurer does business in the forum State suggests no further contacts between the defendant and the forum" and the fact that his insurer chose to do business in the forum State could not form the basis for a finding "that the *defendant* engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable" (444 US, at pp 328, 329); and (2) there were no "significant contacts between the litigation and the forum" because the insurance policy was not the subject matter of the action and is not related to its operative facts *(Rush v Savchuk,* 444 US, at p 329).[1]

Nowhere in *Rush* did the Supreme Court indicate whether any retroactive effect was to be given its holding, and the resulting controversy among the commentators has been spirited (compare McLaughlin, New York Trial Practice, NYLJ, Feb. 8, 1980, p 1, col 1, with Siegel, 'Seider' Overruling—Problem of Retroactivity, NYLJ, Feb. 26, 1980, p 1, col 2, and Lipsig, Tort Trends, NYLJ, July 24, 1980, p 1, col 1). Arguing against retroactive application of *Rush,* Professor Siegel correctly observed that before *Shaffer v Heit-*

---

1. For a general history of the *Seider* doctrine, see Newman, Appellate Practice, NYLJ, Feb. 21, 1980, p 1, col 1.

*ner* (433 US 186, *supra*), reliance on *Seider*-based jurisdiction was entirely justified. Furthermore, the Second Circuit and New York Court of Appeals decisions in *O'Connor (supra)* and *Baden (supra)* make it apparent that post-*Shaffer* reliance had a significant basis in decisional law, although the cautious might well have instituted protective actions in the jurisdictions more directly connected with the causes of action and the defendants. Whether reliance upon the *Seider* decision and its approving progeny suffices to trigger meritorious due process resistance to dismissals for want of quasi in rem jurisdiction would require a case-by-case evaluation of whether the plaintiff could bring a timely action in another jurisdiction and, perhaps, whether the reliance on *Seider*-based jurisdiction was justified. Such consideration would depend, at least in part, upon whether the action was commenced pre- or post-*Shaffer*. If post-*Shaffer*, the extent to which the plaintiffs' reliance on *Seider* was justified might in turn depend on whether the action was commenced before or after *O'Connor* and *Baden* came down in support of *Seider*.

The first major post-*Rush* case in this State—appropriately enough in the Court of Appeals—was *Erneta v Princeton Hosp.* (49 NY2d 829, revg 66 AD2d 669) which, on constraint of *Rush*, dismissed a malpractice action against a New Jersey hospital and two physicians who were residents of New Jersey, based on a *Seider* attachment of their malpractice insurance policy in New York. Although the Court of Appeals did not specifically address the point, the *Erneta* plaintiff was an infant who probably could still have commenced a timely action in New Jersey after the New York dismissal. Furthermore, the *Erneta* defendants apparently had timely moved to dissolve the attachment on the basis of *Shaffer v Heitner (supra)* and before the reaffirmance of *Seider* in *Baden* (45 NY2d 889, *supra*). Superficially read, *Erneta* indicates that *Rush* is to be applied retroactively in all cases, but it may also stand for the proposition that *Rush* should be applied retroactively only where the plaintiff has an alternative forum in which to timely bring an action.

The first post-*Erneta* determination at the intermediate

appellate level on the retroactivity issue emanated from the Third Department which, in *Morehouse v Volkswagen AG* (74 AD2d 164), dismissed the complaint even though the plaintiff already was barred from commencing an action in the jurisdiction in which the accident occurred. The *Morehouse* Bench read *Erneta (supra)* to require retroactive application of *Rush*, finding that the plaintiff had not relied on *Seider* to her detriment because the Statute of Limitations in the other jurisdiction had run before the *Seider*-based action was instituted in New York. Furthermore, the defendant had not waived the affirmative defense of lack of quasi in rem jurisdiction, asserting in its answer that the attachment had deprived the defendant of due process. Although the *Morehouse* court found that the plaintiff had not relied on *Seider*-based jurisdiction to her detriment, the action actually had been commenced in 1970, long before *Donawitz v Danek* (42 NY2d 138, *supra)* and *Shaffer (supra)* cast doubts upon the validity of *Seider* (17 NY2d 111, *supra)*.

The Fourth Department applied *Erneta* (49 NY2d 829, *supra)* in a slightly different context in *Trosky v MacMillan* (75 AD2d 721) and *Trosky v Sider* (75 AD2d 722). In those cases, the plaintiff had obtained ex parte orders of attachment of the defendants' insurers' obligations to defend and indemnify the defendants. The plaintiff then moved upon notice to confirm the orders of attachment. The insurers opposed the motion on the ground that they were not present in New York and that service upon their subsidiaries which were present in New York did not confer jurisdiction over them. Special Term denied the motion, and the plaintiff appealed. While the appeal was pending, the Supreme Court decided *Rush v Savchuk* (444 US 320, *supra)*, and the insurers cited it as a separate ground for affirmance. The plaintiff, of course, argued that *Rush* should not be applied retroactively, but the Fourth Department rejected that contention. Although there was no indication that plaintiff could have commenced a timely action where the accident occurred and the defendants resided, the defendants had not waived their objection to the assertion over them of quasi in rem jurisdiction because they had not yet interposed their answers.

The First Department also held *Rush (supra)* to apply retroactively, even where the plaintiff could not bring a timely action in an alternate forum. In *Gager v White* ('78 AD2d 617), the court reversed a refusal by Special Term to dismiss the action, even though the plaintiff there was specifically found by Special Term to have relied on the *Seider* doctrine to her detriment. In *Gager*, as in *Morehouse (supra)*, the objection to quasi in rem jurisdiction had been timely asserted (see, also, *Cirillo v Transportation Vehicles*, 78 AD2d 835; *Carbone v Ericson*, 79 AD2d 551). *Gager (supra)* was followed in *Biener v Hystron Fibers* ('78 AD2d 162), although a different result was reached due to a stipulation which served to waive the jurisdictional defect. In our own department, *Erneta (supra)* was followed by *Uman v Timpane* (77 AD2d 620), where we reversed a Special Term order which denied the defendants' motion to dismiss a *Seider*-based suit for lack of jurisdiction. In *Uman*, however, the plaintiff still could have brought a timely action in an alternate forum.

In all of the mentioned post-*Rush* cases, the defendant had timely asserted objection to quasi in rem jurisdiction or, at least, had not waived it. More recently, the First Department, in *Ranz v Sposato* (77 AD2d 408; see, also, *Cachat v Guertin Co.*, 79 AD2d 549), refused to dismiss an action where the defendants did *not* timely object to the assertion over them of quasi in rem jurisdiction. Specifically declining to reach any of the constitutional questions posed by *Rush v Savchuk* (444 US 320, *supra)*, the court held (p 413) that the defendants, "by their failure to raise the issue either by motion or by answer, waived the initial defect in jurisdiction under CPLR 3211 (subd [e]). Hence, the right now to move to dismiss has vanished *(Grenz v McLaughlin*, NYLJ, Oct. 16, 1980, p 11, col 1 [App Term, 2nd Dept])." Both *Ranz* and *Cachat* were decided over the dissents of Justices who believed that the defendants' initial waivers should be cured by granting leave to amend the answers.

To us, it is clear that there is no basis for a dismissal motion if the jurisdictional defect was not raised prior to the motion. Therefore, nonobjecting defendants can avail

themselves of *Rush* benefits only if granted leave to amend their answers to assert an affirmative defense challenging quasi in rem jurisdiction (see CPLR 3025, subd [b]; *Grenz v McLaughlin*, NYLJ, Oct. 16, 1980, p 11, col 1; McLaughlin, New York Trial Practice, NYLJ, Feb. 8, 1980, p 1, col 1). Such leave may be granted, of course, in the exercise of sound discretion "upon such terms as may be just" (CPLR 3025, subd [b]), but whether such discretion should be exercised or denied if the plaintiff can still timely commence an action in a more suitable jurisdiction is a matter for each forum. In such circumstances, the court has the flexibility to match its sensitivities to the requirements of justice.[2]

Here, the defendants argue that they did voice timely objection to quasi in rem jurisdiction by virtue of the affirmative defense in their answer. If they did, *Erneta* (49 NY2d 829, *supra*) would seem to require dismissal of the case. Review of the answer, however, indicates that quasi in rem jurisdiction was not controverted. Paragraph "1" of the affirmative defense declares that the court lacks "jurisdiction over the person" of the defendants; paragraph "2" states that plaintiff is limited in recovery to the amount of "any contractural [*sic*] obligation of the liability carrier of the defendants"; and paragraph "3" reasserts that the answer is not a waiver of the defense of lack of "personal jurisdiction". Clearly, then, only personal jurisdiction has been challenged in the answer and quasi in rem jurisdiction seems to be admitted.

In the face of this admission of quasi in rem jurisdiction, it was error for Special Term to deal with defendants' motion to dismiss on the merits. Having failed to object to quasi in rem jurisdiction by preanswer motion or in their answer, defendants must be deemed to have waived that ground (see CPLR 3211, subd [e]). Only if granted leave to amend their answer to assert the jurisdictional objection

---

2. In his New York Trial Practice column (NYLJ, Feb. 8, 1980, p 1, col 1), Dean McLaughlin suggests as an alternative that the court may grant the defendant's motion to amend on the condition that the defendant agree not to assert the Statute of Limitations in any later action brought in a more appropriate forum. We reject this suggestion for the reasons stated by the First Department in *Foley v Roche* (68 AD2d 558, 565-566).

can defendants seek dismissal. Considering the nature of the controversy, and in the interests of judicial expediency, we will treat defendants' application and motion to dismiss and for such additional relief as might seem just to include requests for leave to amend their answer to assert the affirmative defense of lack of quasi in rem jurisdiction, should dismissal be denied. On the facts before us, we exercise our discretion (see *Phoenix Mut. Life Ins. Co. v Conway*, 11 NY2d 367, 370), to deny dismissal and, in the interests of justice, to deny as well any amendatory relief because of plaintiffs' inability to bring a timely action elsewhere based upon what we believe was a justified reliance on *Seider v Roth* (17 NY2d 111, *supra)* as a jurisdictional basis for their action in this State. In the face of their good faith reliance on the clear language of *Seider v Roth (supra)*, *O' Connor* (579 F2d 194, *supra)* and *Baden* (45 NY2d 889, *supra)*, these plaintiffs are entitled to protection against amendment of defendants' answer which would portend draconian destruction of their causes of action.

Defendants have also asserted, however, a second and more narrow ground for reversal: that the Sheriff's levy pursuant to the original order of attachment was not duly perfected. As has been observed, in *Kalman v Neuman* (71 AD2d 996, *supra)* we reversed Special Term's dismissal of the complaint for lack of jurisdiction and remitted the matter for further proceedings to determine whether plaintiffs had failed to perfect their levy or procure an extension of time to do so within the 90-day period prescribed by CPLR 6214 (subd [e]). We also granted plaintiffs leave to apply, at their option, for an extension of time within which to commence a special proceeding pursuant to CPLR 6214 (subd [d]) to "compel the payment, delivery or transfer * * * of [the personal] property or debts" levied upon, and plaintiffs did move for an extension of time within which to commence a special proceeding pursuant to CPLR 6214 (subd [d]). In the order appealed from dated February 13, 1980, Special Term held that the Sheriff of Westchester County had made due levy and had custody of the asset (i.e., the insurer's debt), that no extension of time was therefore necessary, but that if plaintiffs deemed it necessary, their time to commence a special proceeding

against the garnishee and the order of attachment would be extended *nunc pro tunc* as of January 25, 1976 to February 28, 1980, subject to the rights of any intervening lienors. Special Term apparently based its decision that the levy had been duly perfected on a letter produced by the Sheriff on his supplemental return to the Queens County Clerk. This letter was not before Special Term or this court at the time of the prior appeal. Special Term found that the letter constituted a delivery of the policy to the Sheriff pursuant to the levy upon the garnishee-insurer.

Defendants do not question the propriety of the court's granting of an extension of time to commence a special proceeding and of the order of attachment. They do, however, contend that the original levy was never perfected, claiming that the letter could not serve as a substitute for the actual policy. Since the Sheriff never had custody of the policy, the order of attachment became void after 90 days.

Plaintiffs argue that an insurer's policy obligation to defend and indemnify is an attachable debt and that the letter from the attorneys for the garnishee was an adequate substitute for the actual policy, especially because an intangible debt is not in any case amendable to manual delivery. The letter, they assert, served to repose constructive custody of the debt in the Sheriff.

■ While the letter did not state that the garnishee-insurer was "holding the proceeds of the policy for the potential benefit of the plaintiff" in so many words (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C6214:7, p 122), it did admit that a policy issued by the garnishee-insurer covering defendants at bar was in full force and effect. Given that the insurer is not required to turn over either the proceeds of the policy or the policy itself to the Sheriff, and that an outright acknowledgment by the insurer is unlikely (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C6214:7, p 122), it is hard to imagine what more could reasonably be expected of a garnishee-insurer than the acknowledgment that it issued the valid and existing policy at issue. Such acknowledgment implies that it will defend the action and, if plaintiffs are

awarded judgment, pay such judgment up to the limits of the policy coverage. Thus, Special Term correctly held that the levy had been timely perfected, conferring quasi in rem jurisdiction over defendants at bar.

Accordingly, Special Term's grant of the motion to extend the order of attachment is affirmed as is its denial of the application and motion to dismiss the complaint, which we have also treated as an application and a motion for leave to amend the answer.

MANGANO, GIBBONS and GULOTTA, JJ., concur.

Two orders of the Supreme Court, Queens County, dated February 13, 1980 and March 3, 1980, respectively, affirmed, without costs or disbursements.