opinion of the court
Irwin M. Silbowitz, J.
Defendant, following assignment of this matter to Trial Term, Part 8, moved to dismiss plaintiffs’ complaint upon the ground of lack of personal jurisdiction.
Prior to the commencement of trial the court orally and on the record denied this motion and struck defendant’s affirmative defense. The court at that time, informed counsel that a memorandum decision setting forth the rationale of the court would be forthcoming prior to the conclusion of the trial. The following constitutes the written decision of this court:
Defendant moves at Trial Term, Part 8, of this court, to dismiss plaintiffs’ action pursuant to an affirmative defense of lack of personal jurisdiction contained in its answer.
*1066 The instant action involves a suit for personal injuries allegedly sustained by plaintiff, Katherine Calloway, on June 7,1975, as a result of an accident on a ride called the “Twister” in an amusement park in Willow Grove Park, Pennsylvania. Defendant, National Services Industries, Inc., doing business as Six Gun Territory, is a Delaware corporation with its principal place of business in Atlanta, Georgia. The defendant designated the Secretary of State of the State of New York and Corporate Trust Company as agents for the service of process upon them. Similar designations were made in the State of Pennsylvania.
By letter dated October 24,1975, the attorneys for plaintiff transmitted to the office of the Sheriff of Montgomery Park, Pennsylvania, two copies of a summons addressed to defendant corporation. The Sheriff advised by return of service dated January 16, 1975, that defendant was “not found” and was “closed until Spring of 1976”. Thereafter, two copies of the summons and complaint were again forwarded to the Sheriff’s office for the purpose of effectuating service.
On April .29, 1976, Deputy Sheriff Patrick Muldowney served the summons and complaint. His affidavit of service states that he served the named defendant by service upon “Mrs. Shields, General Agent, at the office of Moe Hankin, an officer of said defendant”.
On May 13,1976, defendant interposed an answer which set forth, among other items, an affirmative defense of lack of jurisdiction over the person of the defendant on the ground that defendant was not served with process in accordance with the provisions of CPLR 311 (subd 1).
In the intervening six years between joinder of issue and the instant application the matter has been vigorously litigated. During this time span defendant has made no less than seven motions seeking to compel discovery calculated to garner information to permit a defense on the merits to plaintiffs’ lawsuit. At no time during this six-year interval was any application made addressed to the jurisdictional issue.
The matter was placed upon the Trial Calendar and appeared thereon for conference on the merits on several *1067 occasions. On June 10,1982, the case was assigned for jury selection and a jury was sworn on June 17, 1982.
On June 27,1982, the action was assigned to Trial Term, Part 8, for final disposition. On this date the defendant for the first time, moved to dismiss plaintiffs’ complaint based upon its jurisdictional objection.
The court then directed that an immediate preliminary trial of defendant’s jurisdictional objection be had before the jury (cf. Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:48, p 52) since the parties could not agree as to the facts.
The salient facts elicited at this trial turned out to be undisputed. It was established that Moe Hankin was not an officer of the defendant corporation and that neither Mr. Hankin nor Mrs. Shields were persons authorized to accept service on defendant under the provisions of CPLR 311 (subd 1).
However, it was also established that Mr. Hankin was one of the principal owners of the property upon which defendant’s amusement park was located. The owners of this property leased same to defendant upon a seasonal basis pursuant to a written lease. In fact, by lease termination agreement defendants transferred to the Hankin family certain of its equipment located on the premises.
Mrs. Shields was a legal secretary at the office of Mr. Hankin who was also an attorney. Accordingly, a connection in fact existed between the office of Moe Hankin and the defendant.
Without setting forth the details of transmittal, suffice it to say that defendant’s counsel was in possession of the summons and complaint in sufficient time to prepare and serve an answer within 14 days after the initial service.
Based upon the foregoing, no factual issues requiring resolution by a jury were set forth. The sufficiency of the service is a question of law. Accordingly, the issue was removed from the province of the jury to be considered and disposed of by the court.
For the reasons set forth and expanded upon below, the court denies defendant’s motion to dismiss on the ground of lack of jurisdiction and strikes said affirmative defense.
*1068 CPLR 311 (subd 1) provides for personal service of process upon a corporation by delivery of the summons to an officer, director, managing or general agent, ór cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service. The fact that a summons and complaint which was originally delivered to the wrong person ultimately comes into the possession of the party to be served does not validate such service (Fashion Page v Zurich Ins. Co., 50 NY2d 265; McDonald v Ames Supply Co., 22 NY2d 111).
As stated before, plaintiffs’ service of process upon Mrs. Shields at Moe Hankin’s office did not comply with the requirements of CPLR 311 (subd 1). Even though the summons and complaint quickly came into defendant’s possession, plaintiffs’ service was invalid under the statutory and decisional law of this State.
Thus, defendant was entitled to raise an objection to the court’s jurisdiction.
Under CPLR 3211 an objection to the court’s jurisdiction over a person is waived unless it is raised by motion or in a responsive pleading. Defendant’s answer contained such a defense. Therefore, under the present statutory and decisional law of this State, the defendant preserved its jurisdictional objection, even though it did not move on the basis of this defense until over six years had elapsed since joinder of issue.
However, a different view and result has emerged in the Federal courts. In interpreting rule 12 of the Federal Rules of Civil Procedure (US Code, tit 28, Appendix), a statute analogous to CPLR 3211, the Federal Bench has held that a defendant may impliedly waive a jurisdictional objection by conduct inconsistent with its assertion.
In Vozeh v Good Samaritan Hosp. (84 FRD 143), the defendant by answer dated December 5, 1977, raised lack of personal jurisdiction as a separate defense. Defendant offered no proof in support of this defense until he filed a motion to dismiss on November 2,1979. Prior to filing this motion, the defendant had engaged in several conferences to discuss a possible settlement without indicating his intention to address the jurisdictional issue. The United *1069 States District Court for the Southern District of New York held that the defendant had abandoned his jurisdictional objection and waived his rights thereunder. Judge Cooper stated (supra, p 144):
“We cannot readily dismiss the plain fact that until November 2, 1979, no proof addressed to the issue of this Court’s in personam jurisdiction was presented — silence for close to two (2) years: from December 5,1977 (the date the answer was filed with our Clerk of Court) to November 2, 1979, almost at the eve of trial set (on October 19,1979) for November 13, 1979.
“This unwarranted delay produces an unfair hardship on plaintiffs. It subjects them to the disadvantage of attempting to assemble proof, the effectiveness of which may well be severely diluted by the passage of time (Taint memory’ of witnesses, absence of others, etc., etc.). Further, plaintiffs would have to face the possibility that the Statute of Limitations might outlaw their claims altogether.
“The movant is clearly guilty of laches and to a degree worthy of condemnation.”
The Vozeh rationale was adopted by the United States District Court for the Eastern District of New York in Merz v Hemmerle (90 FRD 566). While the issue in Merz concerned the tolling of the Statute of Limitations, the court’s underlying analysis turned upon the application of rule 12 of the Federal Rules of Civil Procedure. In Merz, the defendant’s answer contained a cross claim against a codefendant, defenses on the merits and an affirmative defense that the court lacked personal jurisdiction because plaintiffs’ service was invalid under New York State law. The court held that defendant had waived her jurisdictional objection by her conduct in the litigation, even though she had raised it in her answer as required by rule 12 of the Federal Rules of Civil Procedure. Writing for the court, Judge Neaher stated (supra, p 568):
“Thus far, it is plain that a technical reading of the law favors defendant’s position. If service was improper under New York law, then the limitations period never was tolled, and an attempt now to serve new process would be untimely. Nevertheless, we conclude that the relief of *1070 dismissal defendant seeks cannot be granted because her conduct in this litigation constitutes a waiver of the defense she has raised. [Emphasis supplied.]
“It is undisputed that defendant received actual notice of the action; her signature appears on the certified mail return receipt attached to the Kentucky marshal’s return on service. It is also true, however, that when she appeared in the action her answer raised the defense of improper service, thus preserving it from waiver under Rule 12(h)(1)(B). Nevertheless, the ‘“[federal] Rules are not inclusive of the circumstances in which a defense will be deemed waived. Rule 12(h) simply defines the outer and absolute limits of timeliness. It does not preclude waiver by implication.” ’ Sherman v. Moore, 86 F.R.D. 471, 473 (S.D.N.Y. 1980), quoting Altman v. Liberty Equities Corp., 322 F.Supp. 377, 378-79 (S.D.N.Y. 1977). Thus, where one of the defenses enumerated in Rule 12(b)(2)-(5) had been timely interposed it was deemed waived nonetheless where the defendant’s conduct between the answer and motion was held to belie a bona fide intention to raise the issue. See, e.g., Vozeh v. Good Samaritan Hospital, 84 F.R.D. 143 (S.D.N.Y. 1979) (two-year delay in challenging personal service); Fairhope Fabrics, Inc. v. Mohawk Carpet Mills, Inc., 140 F.Supp. 313 (D.Mass.1956) (venue defense waived where defendant’s conduct in defending action indicated venue was not inconvenient) * * *
“It was by filing her cross-claim, and later obtaining the court’s approval to file a third-party claim, that defendant waived her otherwise timely objection to the manner in which she was served with process.”
Clearly, both the Eastern and Southern Districts have embraced the proposition that despite technical compliance with procedural rules, a defendant may waive his jurisdictional objection by his conduct in the litigation. The Appellate Division, First Department, adopted a similar view in Biener v Hystron Fibers (78 AD2d 162).
In Biener, defendant Hystron impleaded Security Forces, Inc. (Security) as a third-party defendant. Jurisdiction over Security was obtained by a Seider v Roth (917 NY2d 111) attachment. Challenging the constitutionality of the Seider attachment, Security asserted the affirmative de *1071 fenses of lack of subject matter, personal, in rem and/or quasi in rem jurisdiction in its answer. Prior to the United States Supreme Court decision in Rush v Savchuk (444 US 320), plaintiff, defendant Hystron and Security entered into a stipulation in which it was agreed that plaintiff’s action should be settled for $450,000 to be paid by defendant Hystron and Security and their insurance carriers, or by such other firms’ carriers or persons as directed by the court. Certain facts were stipulated as well. To assist the court in apportioning liability between the defendants, insurance policies and other documents were submitted to the court. The stipulation was never embodied in a writing, other than a transcript of the court’s minutes. There was no reference to Security’s jurisdictional defenses in either the minutes or the stipulation. On the basis of the stipulation and the documents submitted by the defendants, the trial court found Security liable to indemnify defendant Hystron for the $450,000 settlement. Judgment was entered, and an appeal was pending when the Supreme Court decided Rush v Savchuk (supra). Noting that it would ordinarily have to dismiss the action for lack of jurisdiction under Gager v White (78 AD2d 617), the court held that Security had waived the jurisdictional defense asserted in its answer by entering into the stipulation. The Appellate Division in Biener (76 AD2d 162, 165-166, supra) thus recognized that a jurisdictional defense may be waived by the defendant when his conduct in the litigation is inconsistent with its assertion, stating: “The law is well settled that where jurisdiction over the subject matter exists and jurisdiction over the person of the defendant was not constitutionally or otherwise properly obtained, the defendant may waive the defense by appearance, by failure to plead such defense, by failure to move to dismiss upon such basis, or by stipulation. There was no express stipulation of waiver here. However, the form of the stipulation plainly indicated that there was no intent to preserve the jurisdictional issue. It is urged that an attempt to preserve the issue would have been futile because the state of the law at the time was such that the court would be required to hold that jurisdiction had attached (Baden v Staples, 45 NY2d 889). This is beside the point. It is manifest that the parties *1072 wished to settle the case and were waiving any challenge to the court’s jurisdiction.” While the facts in Biener differ dramatically from the facts in Vozeh and Merz, as well as the instant case, it is clear that the doctrine of implied waiver by conduct enunciated by the Federal courts is recognized by at least one New York State appellate court, and to that extent, Biener is analogous to the case at bar. Moreover, Rich v Lefkovits (56 NY2d 276) recently decided by the Court of Appeals contains a lengthy discussion of CPLR 3211. Although determined upon a factual setting which differs from the case at bar, the court in Rich obviously recognized the doctrine that a waiver of an affirmative defense of lack of personal jurisdiction may be found outside the purview of the statute under appropriate factual circumstances.
Due process requires that a defendant receive notice that a lawsuit has been instituted against him. The purpose of CPLR 311 (subd 1) is to insure that a corporate defendant receives actual notice of the commencement of the suit. In the instant action, it is undisputed that the defendant had actual notice of the plaintiffs’ lawsuit, despite the fact that the person served was not one of the persons authorized by CPLR 311 (subd 1). Therefore, the defendant cannot claim that it was denied due process because plaintiffs’ service achieved the underlying purpose of CPLR 311 (subd 1). This court believes that recent pronouncements by the New York State courts in regard to CPLR 311 (subd 1) clearly indicate that the courts are moving away from a strict interpretation of the statute and adopting a more liberal and reasonable view. Accordingly this court adopts the rationale of implied waiver and finds that defendant’s conduct in this litigation constituted an implied waiver of its jurisdictional objection.
In rendering this decision the court is not unmindful of the lax and cavalier attitude of plaintiffs’ counsel towards this defense. The court notes that at the time this defense was interposed approximately two years remained on the Statute of Limitations and that plaintiffs were free without jeopardy, to challenge the defense during this period. Counsel for plaintiffs through inadvertence and neglect failed to take any affirmative action to remedy the sitúa *1073 tion. However, there came a point in time when it became meaningless for plaintiffs to challenge the jurisdictional defense. On June 7, 1978, the Statute of Limitations expired and along with it, plaintiffs’ opportunity to protect themselves.
But it is the more neglectful or intentional conduct of the defendant which most distresses this court. Under existing law the defendant, at any time after the expiration of the Statute of Limitations, was free, without risk, to move to dismiss the action. Rather, defendant failed to do so and elected for over three years thereafter to contest the matter upon its merits.
The conduct of the defendant subsequent to June 7,1978 was inconsistent with reliance upon a jurisdictional defense. Rather than seeking a dismissal defendant chose to move as follows:
Motion to compel plaintiffs’ deposition returnable March 14, 1979;
Motion for discovery and inspection returnable May 4, 1979;
Motion to compel production of medical reports returnable February 19, 1980;
Motion to compel a further physical examination returnable June 3, 1981.
The foregoing clearly evinces an intention by defendant to pursue a defense on the merits rather than utilize its technical defense. Moreover, this pattern continued even after this matter was placed on the Trial Calendar and conferenced by the court. Defendant did not move to dismiss the action but actually conducted settlement negotiations prior to the assignment of this matter to a Trial Part.
It is obvious to all concerned that the conduct of defendant’s counsel in the defense of this lawsuit constituted a drain upon the resources of the court. At a point in time when courts are deluged with all manners of litigation, at a time when the pressing requirements of society mandates that a greater number of Judges preside in the criminal branch, defendant elected to pursue a defense on the merits rather than attempt to litigate a defense which based upon *1074 its counsel’s conduct and attitude at the time of trial was bound to be successful under State law.
This court can only speculate as to the number of judicial and nonjudicial manpower hours expended and wasted in disposing of defendant’s motions addressed to the merits of this litigation and in conferencing this case.
There can only be two reasons for this course of conduct on defendant’s part — either inadvertence or intentional conduct.
If the former, then defendant is even more guilty of neglect than is plaintiffs’ counsel. The equities of the situation lie with the plaintiffs in view of the liability aspects of this case and the serious nature of the injuries sustained. Moreover, it is undisputed that the due process requirements of process, notice and an opportunity to defend, have been afforded defendant. It would be unjust, in view of the factual circumstances disclosed, to bar plaintiffs’ lawsuit at this point in time. If the conduct of defendant can be characterized as intentional then said conduct is conscionable. It would constitute no more than a frivolous and meaningless drain upon the resources and time of both plaintiffs and the court.
Plaintiffs have been severely prejudiced by the passage of time which has made it difficult for them to produce a witness with specific recollection of the events surrounding the service of process.
The time has arrived for the courts of this State to recognize and embrace the doctrine of implied waiver by conduct not countenanced by at least two decisions of the Federal court. To do so would prevent the travesty which this court has observed.
The purpose and spirit of the law is to determine matters on their merits and to resolve the equities of grievances consistent with fair play and justice. The era in which technical defenses can be utilized to frustrate the ends of justice and squander the precious time of the courts should come to an end.
Legislation should be enacted requiring a defendant to resolve, within a specified period of time, certain affirmative defenses such as lack of jurisdiction. This would not *1075 prove to be an intolerable or unjust burden to a defendant. CPLR 511 places such a burden upon a defendant in requiring that a motion to change the venue of an action be made within specified time limits. This involves merely a change in the location of the place of trial not whether a trial and all its requisite discovery is even required. Nor would such legislation encourage carelessness as to the service of process. A plaintiff faced with a prompt application to dismiss would be forced to expend time and money concerning the burden to establish jurisdiction. Moreover, the recollection of the witnesses as to the service of process would be far keener. Due process would not be offended by such a rationale.
Such a legislative amendment would ensure, insofar as practicable, that every litigant would have his or her day in court either to adjudicate the case on the merits or to test technical defenses.
The law must remain true to its avowed purpose — a search for the truth — and should not be held captive to anachronistic concepts amounting to tactical gamesmanship.
Until this time comes the court must protect litigants and itself from conduct amounting only to procedural fencing. Accordingly, the doctrine of implied waiver by conduct should be adopted to prevent what has occurred in the instant case. When a defendant has by its own conduct chosen, for all intents and purposes, to defend a matter on the merits rather than promptly move to resolve its technical objections, it should be forced to bear the consequences of its own conduct.