OPINION OF THE COURT
Fuchsberg, J.
These five appeals are part of the aftermath of the Supreme Court’s recent decision in Rush v Savchuk (444 US 320), the effect of which was to vitiate the predicate for quasi in rem jurisdiction pioneered in 1966 by Seider v Roth (17 NY2d 111). In essence, Seider held that a liability insurance contract issued by a carrier authorized to do business in this State, contingent as its obligations may be, partakes of the character of a “debt” which by its attachment may be made to serve as the foundation for jurisdiction over its nonresident insured defendants. After this holding had survived 14 years of doctrinal dispute, Rush was to declare it violative of due process. The issue now is whether this ruling is to be applied prospectively alone or retrospectively as well.
The cases on which we are to act present typical Seider fact patterns. In each, a New York domiciliary seeks damages for injuries or death sustained in an automobile accident outside the State as a result of the alleged negligence of a nonresident operator or owner of a motor vehicle. Save for the plaintiff’s residence, in all, for all practical purposes, the sole connection with this State was the policy’s availability for attachment.
Because in every instance the cases before us were pendente lite when the Supreme Court administered its coup de grace, they all became the subject of motions to dismiss. *483 These initially were all denied, "nisi prius declining to apply Rush to ongoing cases whose plaintiffs, in choosing this forum and foregoing others, had, as these courts saw it, placed justifiable reliance on New York’s previously consistent, if vigorously contested, course of decisional support for Seider’s jurisdictional analysis (see Baden v Staples, 45 NY2d 889; Donawitz v Danek, 42 NY2d 138; Neuman v Dunham, 39 NY2d 999; Simpson v Loehmann, 21 NY2d 305, mot for rearg den 21 NY2d 990; see, also, O’Connor v Lee-Hy Paving Corp., 579 F2d 194, cert den 439 US 1034 ; Minichiello v Rosenberg, 410 F2d 106, affd en banc 410 F2d 117, cert den 396 US 844, reh den 396 US 949).
The story in the intermediate appellate courts, however, was different. In Cachat v Guertin Co., there was an affirmance, but only because no jurisdictional defense had been interposed. On the other hand, because some type of jurisdictional objection had been raised in the other four, each brought a reversal and dismissal. For the reasons that follow, we now hold that Rush must be applied only when a specific objection to the assertion of jurisdiction founded on the attachment of the out-of-State defendant’s liability insurance policy was preserved by appropriate motion or affirmative defense (CPLR 3211, subd [e]).
Especially since almost every party touches on the matter, our discussion may well start with the reminder that, consonant with the common law’s policy-laden assumptions, a change in decisional law usually will be applied retrospectively to all cases still in the normal litigating process (People v Pepper, 53 NY2d 213, citing People v Morales, 37 NY2d 262, 267-268; Kelly v Long Is. Light. Co., 31 NY2d 25, 29, n 3). By way of departure from this generality, however, where there has been such a sharp break in the continuity of law that its impact will “wreak more havoc in society than society’s interest in stability will tolerate” (Fairchild, Limitation of New Judge-Made Law to Prospective Effect Only: “Prospective Overruling” or “Sun-bursting”, 51 Marq L Rev 254), it is now recognized that, when adherence to the traditional course is strongly contraindicated by powerful factors, including strong elements *484 of reliance on law superseded by the new pronouncement, a court may direct that it operate prospectively alone (Chevron Oil Co. v Huson, 404 US 97; Great Northern Ry. v Sunburst Co., 287 US 358).[1]
All the plaintiffs, stressing that the Statute of Limitations now may have foreclosed an action in a forum where jurisdiction would be constitutionally unassailable, argue that theirs are precisely the kind of cases in which retroactive application should be eschewed. But this is by no means a one-sided argument. As the defendants contend, that Seider might turn out to have not been the only possible “true rule” was not without forewarning (see, e.g., Siegel, New York Practice [1978], § 105, p 127; Stein, Jurisdiction by Attachment of Liability Insurance, 43 NYU L Rev 1075; Reese, Expanding Scope of Jurisdiction Over Non-Residents — New York Goes Wild, 35 Ins Counsel J 118). Moreover, even if the balance on the issue of prejudice had to be struck in favor of those who preferred to rely on the authoritative pronouncements of the New York courts rather than those of its now clairvoyant critics, the fundamental nature of the jurisdictional determinations in Rush renders conventional criteria for fixing an appropriate line of demarcation for overruling academic. For, a constitutional due process limitation on the power of a State’s exercise of its jurisdiction under our Federal system of government, as distinguished, for instance, from one founded in due process considerations bearing on less fundamental substantive and procedural concerns, is an absolute abnegation of the offending State’s ability to continue to act beyond the boundaries the determination defines.
This observation almost inevitably flows from a review of the conceptual building blocks on which Rush stands. They reflect deviation from what for long had come to be the *485 accepted standards for identifying the bounds of State court basis jurisdiction.[2]
Epitomized by Pennoyer v Neff (95 US 714), these were readily divisible into in personam, in which the fulcrum was the person; in rem, which, applicable to designated property, was designed to affect the interests of all persons; or quasi in rem which bore on the interests of particular persons in designated property. The last was of two types. One, like actions to partition land or foreclose a mortgage, was invocable to establish or extinguish claims to or in particular property. The second, the kind involved in the present cases, provided a basis for obtaining a judgment to the satisfaction of which the property on which the jurisdiction was based could be applied though it was not related to the controversy between the parties. (See Restatement, Judgments, §§5-9; Silberman, Shaffer v Heitner: The End of an Era, 53 NYU L Rev 33, 39.)
Background too was the requirement for “minimum contacts”, integral to “fair play and substantial justice” (see International Shoe Co. v Washington, 326 US 310, 316), which, at the time Seider came on the legal horizon, had been established as essential to in personam jurisdiction, yet was not requisite for quasi in rem jurisdiction, for which the presence of property alone sufficed (Harris v Balk, 198 US 215; Pennoyer v Neff, supra).
But Shaffer v Heitner (433 US 186) was to eliminate this dichotomy. Noting that “the law of state-court jurisdiction no longer stands securely on the foundation established in Pennoyer” and that “ ‘ “judicial jurisdiction over a thing,” is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing’ Restatement (Second) of Conflict of Laws § 56, Introductory Note (1971)”, it held that “although the presence of the defendant’s property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State’s jurisdiction” (Shaffer v Heitner, supra, pp 206- *486 207, 209). This, of course, still left open the question as to whether the presence in the forum of the defendant’s policy and the fact that its carrier was doing business there were enough in the Seider-type case to meet these concerns (see Lowenfeld, In Search of the Intangible: A Comment on Shaffer v Heitner, 53 NYU L Rev 102).[3]
In Rush, however, the Supreme Court was to dissipate any differences on this subject. It specifically held that cognizable legal fictions, first that, as a form of property, a debt partakes of 'the situs of the debtor, and, second, that a corporation is to be found wherever it does business, both of which Seider entertained, fell short when no more was present in the forum than the liability insurer and its obligation to defend and indemnify. Furthermore, in defining a forum relationship that would meet The required standards, the court made clear that it is not the relation of the plaintiff who seeks the advantage of its forum of choice that carries weight, but rather that of the defendant against whom.the litigation is targeted.[4] From there it proceeded to arrive at the evaluation that, in a Seider factual framework, “the defendant has no contacts with the forum” (emphasis in original). It was on these foundations, which whatever otherwise has been or can be said on the subject,[5] we have no choice but to accept for the nonce that the Supreme Court concluded that the forum State could impose no binding judgment against a Seider defendant (Rush v Savchuk, 444 US 320, 328-333, supra).[6]
*487 The searching nature of Rush’s reach for the roots of State judicial jurisdictional power is but a reiteration of the basic principle that “[a] court must have jurisdiction in rem or in personam in order to enter a valid judgment of any kind” (4 Carmody-Wait 2d, NY Prac, § 25:3, p 4; accord Hanson v Denckla, 357 US 235, 250). So, with significant contemporaneousness, in World-Wide Volkswagen Corp. v Woodson (444 US 286, 291), a companion case to Rush itself, the court took the occasion to remind us, once again, that “[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere” (emphasis added). Thus, as Dean McLaughlin has noted, “if it violates due process to commence an action with jurisdiction resting on the attachment of the defendant’s insurance policy, it is difficult to comprehend why it does not also violate due process to continue such an action” (1980 Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, C314:4, 1980-1981 Supp, pp 137, 138-139; emphasis in text) [7]
And, since as we have seen, basis jurisdiction now focuses on a defendant’s rights (World-Wide Volkswagen Corp. v Woodson, supra; Kulko v California Superior Ct., 436 US 84, 91), any reliance by plaintiffs is irrelevant. Indeed, inasmuch as lack of such jurisdiction can be asserted even after a defense on the merits has been presented (see Fourth Prelim Rep of Adv Comm on Practice & Procedure, p 187 [1960] ; Harkness v Hyde, 98 US 476), it surely must be given effect here.[8]
*488 That, however, is not the end of the matter. Unlike subject matter jurisdiction, which limits the power of a particular court rather than the judicial jurisdiction of the State en gros, a defect in basis jurisdiction is waivable (CPLR 3211, subd [e]). Under the CPLR, the objection may be raised either by a preanswer motion or by pleading it as an affirmative defense, whichever comes first (see Siegel, New York Practice, § 111, p 137; 4 Weinstein-KornMiller, NY Civ Prac, pars 3211.03-3211.05).[9] Absent the pursuit of either course, a defendant’s voluntary participation in litigation in which the point can be raised, in and of itself, constitutes a submission to the jurisdiction of the courts of our State and, as such, acts as a predicate for basis jurisdiction (see Restatement, Conflict of Laws 2d, § 33; Siegel, op. cit., § 111, p 139; cf. York v Texas, 137 US 15; Henderson v Henderson, 247 NY 428).[10]
Examining the cases before us to determine whether quasi in rem jurisdiction has been appropriately controverted, we note that specific objections on that score were made in the answers filed in Gager v White and Hill v Elliott. In these cases, the Appellate Division’s dismissal of the complaints being mandatory, there should be an affirmance.
*489 In contrast, no jurisdictional protest having been lodged in Cachat v Guertin Co., the Appellate Division also was correct when it there found that dismissal was not in order (CPLR 3211, subd [e]).[11]
Lastly, in Mei Yuet Chin v Cray and Carbone v Ericson, the answers raised objection to in personam jurisdiction only.[12] Since, as explained earlier, a defect in the categorically distinct concept of quasi in rem jurisdiction requires a sufficiently particularized pleading to apprise the plaintiff of its nature with sufficient clarity to avoid prejudice by inducing quiescence (compare CPLR 3211, subd [a], par 8, with par 9; see 4 Weinstein-Korn-Miller, NY Civ Prac, par 3211.15, p 32-66), it follows that the in rem issue must be deemed waived and the Appellate Division orders, which held to the contrary, reversed.
In sum, the orders in Gager v White, Cachat v Guertin Co., and Hill v Elliott should be affirmed, while those in Chin v Cray, and Carbone v Ericson should be reversed and the orders at Special Term in these cases should be reinstated.[13]

. Although this exceptional technique is usually employed in the criminal law area (see, e.g., People v Pepper, 53 NY2d 213, supra; People v Morales, 37 NY2d 262, supra), as the cited cases illustrate, it finds application in the civil sphere as well (see, also, Overruling Decision — Application, Ann., 10 ALR3d 1371).
It is settled that judgments where the normal appellate process has been exhausted may not be collaterally attacked (Chicot County Dist. v Baxter State Bank, 308 US 371, 376; cf. Vander v Casperson, 12 NY2d 56).

. Basis jurisdiction, sometimes known as “judicial jurisdiction” (Restatement, Conflict of Laws 2d, §§ 24, 68), is to be distinguished from subject matter jurisdiction, which embraces the competence of a court to entertain a particular kind of litigation (Green, Civil Procedure [2d ed], p 13).

. Our court (Baden v Staples, 45 NY2d 889, supra) and the United States Court of Appeals for the Second Circuit (O’Connor v Lee-Hy Paving Corp., 579 F2d 194, supra) were of the view that it did.

. Although some post-Seider decisions theorized that the Seider formulation was tantamount to a direct action statute under which a tort plaintiff in essence was proceeding directly against the coverage so that the carrier’s and not the tort-feasor’s was the interest at stake (see Donnwitz v Danek, 42 NY2d 138, 142, supra; Miniehiello v Rosenberg, 410 F2d 106, 109, supra), in Rush, the court found the analogy inappropriate (Rush v Savchuk, 444 US 320, 330-331, supra).

. (See World-Wide Volkswagen Corp. v Woodson, 444 US 286, 299 [Brennan, J., dissenting.] The cited dissent was applied to Rush v Savchuk as well.

. Though a State may interpret its own statute or State constitutional provision more strictly than the Supreme Court interprets the corresponding provision of the Federal Constitution, it may not do so more broadly (Erlanger Mills v Cohoes Fibre Mills, 239 F2d 502 [SOBELOFF, J.] [North Carolina statute *487 authorizing jurisdiction on a basis broader than the “minimum contacts” of International Shoe Co. v Washington, supra, held invalid]).

. We have found no case in which a holding that the assertion of basis jurisdiction would violate due process was limited to prospective effect. Whatever signpost there is, it goes the other way. So the Supreme Court, though only in dictum in a case concerned with subject matter jurisdiction, recently observed that a jurisdictional ruling by definition can never be so limited (Firestone Tire & Rubber Co. v Risjord, 449 US 368). While there is a Third Circuit opinion limiting a holding concerning subject matter jurisdiction (Mc-Sparran v Weist, 402 F2d 867, 876-877 [en banc], cert den 395 US 903), the vitality of that decision would appear to have been sapped by the language in Firestone.

. For these reasons, we are constrained to reject the provisional contentions of some of the plaintiffs, that, if we hold that their actions do not survive *488 jurisdictionally, their dismissal be conditioned on the defendants’ willingness to stipulate that they will not plead the Statute of Limitations if the suit is pursued in an appropriate forum. Unlike resort to that device in cases of forum non conveniens, which presumes the fact of jurisdiction, where basis jurisdiction is lacking there just is no power to condition the dismissal (Kalman v Neuman, 80 AD2d 116, 126, n 2 [Lazer, J.]; Foley v Roche, 68 AD2d 558, 565-566 [Fein, J.]).

. Of course, if a defendant has not appeared at all, there is nothing to preclude essaying a collateral attack on jurisdiction (Restatement, Judgments, §11; see, generally, Chief Judge Desmond’s opn in Vander v Casperson, 12 NY2d 56, 59, supra).

. Historically, where the initial jurisdiction was in rem or quasi in rem, an appearance, followed by a defense upon the merits, automatically transformed the jurisdictional basis to one that was in personam (see Homburger & Laufer, Appearance and Jurisdictional Motions in New York, 14 Buf L Rev 374, 386-388, 406-408; Frummer, Jurisdiction and Limited Appearance in New York: Dilemma of the Nonresident Defendant, 18 Ford L Rev 73; cf. Restatement, Judgments, §§ 38-40). Later, this practice was replaced by CPLR 320 (subd [c]), which provides that when jurisdiction is quasi in rem, the appearance remains a limited one. Under these circumstances, the defendant is now permitted to defend without submitting to in personam jurisdiction (Siegel, op. cit., § 113, p 140).

. The nearest thing to a jurisdictional defense in Cachat was a much different claim, that of defective service.

.. In Chin, in his “Sixth Separate and Complete Affirmative Defense”, the answer pleaded that “the court lacks jurisdiction over the person of the defendant”.
In Carbone, by way of its “Second Defense”, the answer pleaded that “this Court does not have jurisdiction over the person of the defendant” and, as a “Third Defense”, by way of a limited appearance, pleads that “any judgment * ** * may be satisfied only out of the res allegedly attached”.

. Finally, the concurrers’ comments- are quickly met:
First, Erneta v Princeton Hosp. (49 NY2d 829), a memoless entry, which, following Rush by days and here on briefs which had no time to treat with Rush or its retroactivity, as Judge Jasen’s Erneta concurrence so correctly implied, did not scratch the surface.
Secondly, Erneta was a case involving an infant whose time to bring suit in another jurisdiction was still alive because of the toll of the Statute of Limitations for such plaintiffs.
Thirdly, it therefore comes as no surprise that the most current post -Rush comment, emphasizing the need for explication of the issues with which today’s opinion treats and specifically referring to the attention both sides of Rush’s retroactivity issue merit, concludes on the following note: “The magnitude of the impact that [-RmsTi’s] retroactivity will have on tort victims, who walked the red carpet of Seider, thus remains unspoken. And that red carpet was laid down not by legislators, but by judges. Are they really going to pull it in while *490 so many stand on it?” (Siegel, Seider-Overruling Update, New York State Bar Law Digest, No. 257, May, 1981). This more than adequately disposes of the concurring opinion’s predeliction for more summary treatment of this case.