■ UNITECH USA, INC., Appellant, v WILLIAM R. PONSOLDT et al., Respondents. — Order, Supreme Court, New York County (Blyn, J.), entered August 2, 1982, denying plaintiff's motion to confirm the order of attachment and granting defendants' cross motion to vacate the attachment and dismiss the complaint, reversed, on the law, with costs and disbursements, plaintiff's motion to confirm granted, the cross motion to vacate the attachment and dismiss the complaint denied, and the complaint and attachment reinstated. In this action on a stock purchase agreement the sole basis for dismissal of the

action and vacatur of the attachment was Special Term's finding that neither defendant had been properly served. Initially, we observe that the validity of the attachment did not turn on a valid service of process prior to the issuance of the order of attachment. The order itself did not recite that an action had already been commenced; nor did the affidavit in support of the ex parte application make any such assertion. Consequently, CPLR 6213, which permits service of a summons within 60 days after the order of attachment is granted in instances where attachment is granted prior to the commencement of the action, applies. None of the parties disputes that the corporate defendant, NARC, was validly served pursuant to CPLR 311 (subd 1) within 60 days of delivery of the summons and complaint to its authorized agent in Wilmington, Delaware, and that an affidavit of service was on file with the clerk of the court at the time of Special Term's determination. Since plaintiff only levied upon NARC's property that service was sufficient to comply with CPLR 6213, irrespective of whether Ponsoldt had been served, and vacatur of the attachment and dismissal of the complaint against NARC was clearly erroneous. The court also erred in dismissing the complaint against Ponsoldt. Special Term found that the second stage of substituted service required by CPLR 308 (subd 4), viz., mailing to the defendant's last known residence, had not been completed on him, despite the filing of an affidavit of such mailing. These affidavits of service were not included in the motion papers because defendants had never contested the validity of the service of process or plaintiff's compliance with CPLR 6213. (Indeed, they had affirmatively denied challenging the sufficiency of service.) Turning to the merits, we find that the attachment should be confirmed because the levy was properly made. NARC is a foreign corporation not qualified to do business in New York. Plaintiff sets forth a prima facie case, supported by documents, for money damages far in excess of the amount attached. It has filed the requisite undertaking, and made timely motion to confirm the attachment. Moreover, the levy should be continued. Both NARC and Ponsoldt vigorously assert that they are not subject to long-arm jurisdiction. Thus, the necessity of attachment as a basis for quasi in rem jurisdiction is compelling. NARC's contacts with New York are more than sufficient to support quasi in rem jurisdiction, which is determined by whether a party's New York activities satisfy the minimum contacts test of due process. (See, e.g., *Intermeat, Inc. v American Poultry*, 575 F2d 1017.) "Such contacts need not be sufficient to establish that defendant is doing business in New York * * * or to establish that the cause of action arose from a transaction performed or having an effect in the state". (1 Weinstein-Korn-Miller, NY Civ Prac, par 314.20, p 3-304.11.) Here, the stock purchase agreement was negotiated, executed and substantially performed in New York. Plaintiff delivered a purchase price payment of $8,400,000 to NARC by means of New York banking facilities. The securities sold by NARC pursuant to the agreement were transferred to plaintiff and its designees in New York. Both defendants delivered receipts and other documents relating to the transaction in New York. Pursuant to the agreement Ponsoldt executed a guarantee of NARC's postclosing obligations, the performance of which was secured by an escrow fund at Irving Trust in New York into which NARC, as per agreement, deposited $900.000. The escrow agreement itself was negotiated and executed in New York. NARC's postclosing obligations, which involved, *inter alia,* contract representations relating to the net worth and net income of the companies whose stock was being sold, are the subject of this lawsuit. The escrow funds deposited at Irving Trust were invested at the personal direction of Ponsoldt, NARC's sole shareholder, who eventually ordered the purchase of a certificate of deposit while he was in New York. Thus, the escrow funds, which are the subject of the attachment, are directly related to the agreement

upon which the lawsuit is based, and encompass an entirely separate transaction of business by Ponsoldt in New York. In such circumstances, a strong factual predicate exists for attachment as a basis for quasi in rem jurisdiction over NARC since the property upon which plaintiff levied, viz., escrow funds, was deposited pursuant to the agreement which is the subject of this suit. That these contacts may also be sufficient to support in personam jurisdiction over NARC, as well as Ponsoldt, does not furnish reason to vacate the attachment. "[T]here is no rule of law, logic or common sense proscribing resort to [quasi in rem] jurisdiction even though personam jurisdiction might be available." (*Majique Fashions v Warwick & Co.,* 67 AD2d 321, 326.) Plaintiff also argues that attachment is necessary for security. It points out that NARC, a nonoperating holding company with no permanent headquarters or regular employees and no known fixed assets, has incurred substantial debts to companies whose stock it holds, and that among its present creditors are its former lawyers and accountants. It alleges that NARC's credit lines have been canceled. A former business associate of Ponsoldt and executive of one of the companies which NARC has sold has noted, "I am of the belief that William R. Ponsoldt and [NARC] will refuse or be unable to satisfy a judgment rendered against them". However, before attachment will lie for security purposes, it must be shown that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts" (CPLR 6201, subd 3). No such showing has been made here. Finally, we reject defendants' argument that New York courts should defer to a Wisconsin court on the ground of *forum non conveniens* (CPLR 327). In support of this argument they stress that one of the three companies whose stock was sold to plaintiff is located in Milwaukee and that the branch office of the New York-based accounting firm which reviewed the companies' financial records is located in Wisconsin. This showing is insufficient to justify disturbing plaintiff's choice of forum. "The burden of rejecting jurisdiction is not to be lightly assumed." (*Propulsion Systems v Avondale Shipyards,* 77 Misc 2d 259, 262.) Relevant to this issue is Ponsoldt's claim of a Florida residence. NARC shows a New Jersey headquarters. Plaintiff's principal is a British subject. Where all of the parties are not located in the same jurisdiction, and removal is sought to a forum where none of the parties is located, it is appropriate to place jurisdiction in the forum where the parties' agreement was negotiated, executed and to be performed. (See *Income Fund of Boston v Vahlsing, Inc.,* 49 AD2d 724.) That jurisdiction is New York. Furthermore, any question concerning the interpretation of the agreement will turn on New York law. (See *ACLI Int. v E.D. & F. Man [Coffee]*, 76 AD2d 635.) We fail to see why the location of one of the companies involved in this sale or the address of the branch office of the accounting firm involved mandates a transfer of this action out of New York. By no means is it imported litigation. Concur — Sullivan, Milonas, Kassal and Alexander, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I dissent and would affirm. *Forum non conveniens* most assuredly applies here. As the majority memorandum points out, New York has little interest in the outcome of this litigation. Moreover, what we have in this matter is the purchase by the plaintiff Delaware corporation for $8,400,000 of all of the shares of Erie Manufacturing Co. and others being subsidiaries of the defendant North American Realty Corp. (NARC). Erie's factory is located in Wisconsin, and there is pending there a lawsuit commenced by the defendants-respondents here against the plaintiff-appellant and others connected with it covering the same subject matter. The lawsuit here sought an attachment assuming a valid

claim based on the breach of the purchase agreement, of some $600,000. The attachment was for some $430,000, or approximately 5% of the deal, almost *de minimis* in this transaction.