ITC ENTERTAINMENT, LIMITED,
Plaintiff-Appellant,

v.

NELSON FILM PARTNERS and Frank
Menke, Defendants-Appellees.

No. 955, Dockets 83–7018, 83–7026.

United States Court of Appeals,
Second Circuit.

Argued Jan. 31, 1983.

Decided Aug. 4, 1983.

Edward L. Sadowsky, New York City (Tenzer, Greenblatt, Fallon & Kaplan, Stacy L. Wallach, Mona D. Shapiro, New York City, of counsel), for defendants-appellees.

David Jacoby, New York City (Phillips, Nizer, Benjamin, Krim & Ballon, Judith S. Roth, Leonard S. Baum, New York City, of counsel), for plaintiff-appellant.

Before FEINBERG, Chief Judge, LUMBARD, Circuit Judge, and RE, Chief Judge.*

LUMBARD, Circuit Judge:

On December 27, 1982, Judge Stewart of the Southern District of New York granted a request by the plaintiff, ITC Entertainment, Ltd., for a prejudgment attachment order against nondomiciliary defendants Nelson Film Partners and Nelson Film's general partner, Frank Menke. Defendants moved for reconsideration on the ground that they were not "nondomiciliar[ies] residing without the state" within the meaning of New York's nonresident attachment statute, Civ.Prac.Law § 6201(1). The dis-

---

trict court agreed and on January 5, 1983, vacated the attachment order on the ground that Menke had a "dwelling or abode" within the state at which service of process could be made; he was therefore not "residing without the state."

We granted a stay of the January 5 order pending determination of plaintiff's expedited appeal. Because we do not agree that under New York law a defendant's amenability to service of process within the state precludes an attachment against a "nondomiciliary residing without the state," we reverse the order vacating the attachment.

## I. FACTS

The underlying dispute in this diversity case concerns defendants' liability on a $2.7 million note payable to ITC by February 5, 1982. The note was signed by Nelson Film Partners, a limited partnership apparently established for the sole purpose of purchasing the film "Barbarosa" from ITC. Nelson Film's sole general partner is Frank Menke, whose primary business is the promotion of motion-picture syndicated tax shelters. ITC's complaint, filed on November 16, 1982, claims that Nelson defaulted on payment of the note, and that because Nelson is insolvent, Menke is liable for the debt as Nelson's general partner.

Immediately upon filing the complaint, ITC sought an order of attachment under Fed.R.Civ.P. 64 and New York Civ.Prac.L. § 6201(1) (McKinney 1980). The New York statute provides that in non-matrimonial cases where the plaintiff claims and would be entitled to money damages, the court may order an attachment against a defendant who is a "nondomiciliary residing without the state."

Defendants filed papers on December 3, opposing the motion on three grounds: that the nonresident attachment statute was inapplicable once the defendants had submitted themselves to the jurisdiction of the court, that if the statute were construed to

---

* The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

permit attachment against nonresidents solely for security purposes it would be unconstitutional, and that plaintiff was unlikely to succeed on the merits.

On the basis of the undisputed facts and its view on the merits of plaintiff's claims and defendants' counterclaims, the district court made the following findings, none of which are challenged here. The plaintiff is likely to succeed on its claim to recovery on the $2.7 million note, and this claim is unlikely to be defeated by defendants' counterclaims. The defendants do not have sufficient assets to satisfy a $2.7 million judgment. Indeed, Nelson Film Partners has never had more than $30,000 in assets, and $25,000 of this was spent as a "downpayment" on "Barbarosa." Menke will soon be receiving highly liquid assets in connection with a related purchase of the film "On Golden Pond." Menke has the financial sophistication to invest these assets in a manner that would make enforcement of ITC's judgment difficult. Finally, Menke has at times conducted business "in a less than exemplary manner."[1] On the basis of the above findings and the defendants' apparent concession that they were "nondomiciliaries," the court found, in the exercise of its discretion, that an order of attachment should issue. The order was filed on December 29, 1981.

On December 31, defendants sought reconsideration and reargument, raising for the first time on the question of whether Menke, "concededly a nondomiciliary, could be said to reside without the state," given his ownership of and infrequent stays at a cooperative apartment at the Hotel Lombardy in New York City. Both sides filed memoranda on this issue, and a hearing was held on January 5, 1983.

The relevant facts concerning Menke's residence in the State of New York are undisputed. Menke has been a resident of Atlanta, Georgia, for the last sixteen years, and he currently maintains a home there with his wife and four children. He is active in Atlanta civic affairs, having served for the last five years by appointment of the Mayor and approval of the City Council as a Commissioner with the City of Atlanta Community Relations Commission. He votes and pays taxes in Georgia, not in New York. He is the sole stockholder in Menke and Company, which does business in Georgia.

Menke's business activities bring him to New York from time to time. He has maintained a business office in New York City for the last several years and has several business bank accounts here. There is no indication that he has any personal bank accounts in New York City. Menke's only apparent "personal" tie to New York is Room 510 at the Hotel Lombardy, a cooperative apartment that he purchased for $140,000 in 1982. Menke testified in a related action that he stayed at the apartment "infrequently," and in the record on this appeal he describes his visits as "sporadic."

The district court interpreted § 6201(1)'s requirement that the defendant "reside without the state" as unsatisfied whenever the defendant has an "actual place of ... living at which service of process may lawfully be made" for the purposes of New York's law of service, Civ.Prac.Law § 308(2). Noting that the Hotel Lombardy

---

1. The district court noted that:

Plaintiff reports without dispute by the defendant that the Private Offering Memoranda for both "On Golden Pond" and "Prince of the City" stated that Mr. Menke was an attorney, while in fact he is not; they also stated that Menke & Company was a registered investment adviser, while in fact it was not. Plaintiff further reports without dispute that tax liens were filed against Menke in 1980, 1981 and 1982; that Menke falsely stated in a television interview that he was an attorney and that all shares of "On Golden

Pond" and "Barbarosa" were sold out; that he filed letter with the New York Department of Law falsely stating that he is an attorney and registered investment adviser; and that he used funds from the Golden Film Partners offering to make the down payment on "Barbarosa" in contravention of a Golden Film Private Offering Memorandum provision stating that all funds would be held in trust pending consummation of the Golden Film offering.
*ITC v. Nelson Film Partners,* 82 Civ. 3047, slip op. at 7 n. 1 (S.D.N.Y. December 27, 1982).

apartment was a place at which effective service of process against Menke could be made, the court held that Menke was not residing without the state and that attachment was therefore unavailable.

## II. THE SECURITY FUNCTION OF ATTACHMENT AGAINST NONRESIDENTS

■ Defendants argue that even if Menke is a nondomiciliary residing without the state within the meaning of § 6201(1), this section permits an attachment only for the purposes of obtaining jurisdiction over nonresidents; since defendants have already submitted to the jurisdiction of the court, an attachment under this section is unavailable. We disagree.

New York's nonresident attachment statute is designed to serve two independent purposes: obtaining jurisdiction over and securing judgments against nondomiciliaries residing without the state. New York courts have long recognized that provisions for attachment against nonresidents are based on the assumption that "[t]here is much more propriety in requiring a debtor, whose domicile is without the state, *to give security for the debt,* than one whose domicile is within. Such a debtor, pending litigation, might sell his property, and remain at home, in which event he could not be reached by any of the provisional remedies or supplementary proceedings provided by [New York] laws." *Houghton v. Ault,* 16 How.Pr. 77, 84 (Sup.Ct.) (emphasis added), *aff'd,* 16 How.Pr. 87 (Sup.Ct.Gen.Term 1858). New York courts have expressly interpreted the pre-1977 version of § 6201(1) as continuing this tradition, permitting attachment even when the court already has personal jurisdiction over the nonresident defendant. *See, e.g., Dean v. James McHugh Construction Co.,* 43 A.D.2d 1009–10, 352 N.Y.S.2d 310 (1974) (granting attachment against nonresident "for security purposes only and not to confer jurisdiction"); *Zeiberg v. Robosonics, Inc.,* 43

Misc.2d 134, 250 N.Y.S.2d 368 (Sup.Ct.App. Term 1964) (denying motion to vacate attachment "unnecessary for the purpose of acquiring jurisdiction" because attachment "also performs the role of providing security for a plaintiff," and defendant foreign corporation "failed to show that the attachment was 'unnecessary to the security of the plaintiff.'"). *See also Maitrejean v. Levon Properties Corp.,* 45 A.D.2d 1020, 358 N.Y.S.2d 203 (1974) (attachment against foreign corporation not available where unnecessary either for jurisdictional or security purposes).

Defendants argue that the pre-1977 cases are irrelevant because the 1977 amendments to § 6201(1) eliminated the right to issue attachments under this section solely for security purposes. However, defendants' position finds no support in either the language of the amendments[2] or the legislative history and is contrary to the unanimous opinion of courts and commentators. *See* McLaughlin, *Practice Commentaries,* Civ.Prac.L. § 6201(1) (McKinney 1980) ("if a nondomiciliary-nonresident is subject to in personam jurisdiction, ... this subdivision still sanctions the signing of an order of attachment ... to assure the plaintiff that ... there will be property in New York upon which he may execute"); *accord, Katz Agency, Inc. v. Evening News Ass'n,* 514 F.Supp. 423, 429 (S.D.N.Y.1981); *Philipp Brothers Division of Engelhard Minerals & Chemicals Corp. v. El Salto, S.A.,* 487 F.Supp. 91, 93–95 (S.D.N.Y.1980); 7A J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 6201:09 (1982).

We agree with the district court that the statute continues to countenance attachments against nonresidents when appropriate to secure the judgment, even when unnecessary to secure jurisdiction.

## III. "RESIDING WITHOUT THE STATE"

■ The Court held that Menke's apartment at the Hotel Lombardy constituted a

---

2. The relevant portion of § 6201 was changed from "attachment may be granted ... when ... the defendant is ... not a resident or domiciliary of the state" to "attachment may be granted ... when the defendant is a *non-* *domiciliary residing without the state ...*" Act of August 11, 1977, ch. 860, *reprinted in* 2 *McKinney's 1977 Session Laws of New York,* 1611 (1977) (emphasis added).

"dwelling place or usual place of abode" for the purposes of service of process, Civ. Prac.Law § 308, and that Menke was therefore not "residing without the state" within the meaning of the nonresident attachment statute, Civ.Prac.L. § 6201(1). We cannot agree with this construction of § 6201(1).

As the Appellate Division noted in *Morek v. Smolak,* 245 A.D. 355, 356, 282 N.Y.S. 418 (1935), "[t]he words 'residence' and 'resident' and 'reside' in statutes have not a uniform meaning. They are to be construed in light of the context with consideration of the purpose of the statutory enactment." Although the New York courts have not considered the appropriateness of ordering an attachment against a nondomiciliary able to purchase an apartment in a hotel rather than rent a room on a nightly basis, we are confident that given the purpose of the statute they would apply a stricter "residency" standard than that embodied in § 308.

■ Where there is an independent basis for jurisdiction, the purpose of § 308 is to provide "fair notice," to assure that process is served on the defendant "in a fashion calculated to apprise him that he is being sued, and to afford him an opportunity to litigate." *Entwistle v. Stone,* 53 Misc.2d 227, 228–29, 278 N.Y.S.2d 19 (Sup.Ct.1967); *Karlin v. Avis,* 326 F.Supp. 1325, 1329 (E.D. N.Y.1971).[3] The residence requirement in the attachment statute serves a very different purpose. When jurisdiction over the nonresident defendant is not at issue, as is the case here, attachment serves to protect the plaintiff against defendant's ability to pack his bags, abandon his place of convenience within the state, and remain at his permanent residence outside the reach of New York enforcement procedures. Thus, in interpreting § 6201(1)'s requirement that the defendant "reside without the state," the courts focus not on whether the defendant would likely receive actual notice if a summons were left at his dwelling place in the state, but on whether there is a likelihood that the defendant will have adequate assets within the state to respond to a judgment against him.

Although "some of the expressions, not necessary to the decisions, in the cases" suggest that the attachment statute's residence requirement is satisfied whenever the defendant is amenable to service within the state, the decisions themselves clearly rest on practical judgments of whether "the defendant is in fact a non-resident." *Equitable Trust Co. v. Sala,* 102 Misc. 429, 432, 169 N.Y.S. 930 (Sup.Ct.1918). The cases cited by the defendants thus establish only that amenability to service at an abode within the state is one factor among many in determining whether the defendant resides without the state. *See Zenatello v. Pons,* 235 A.D. 221, 225, 256 N.Y.S.2d 763 (1932) (defendant living in New York with spouse for eighteen months with no permanent residence outside the state is a New York resident); *Rosenzweig v. Wood,* 30 Misc. 297, 63 N.Y.S. 447 (Sup.Ct.) (same), *aff'd mem.,* 52 A.D. 631, 65 N.Y.S. 1144 (1900); [4] *see generally* 6 Am.Jur.2d *Attachment and Garnishment* § 227 (1963).

Under the highly practical test established by the cases, we conclude that on this record Menke resides without the state for

---

3. *Karlin* held on facts similar to those presented here that defendant could be served with process at the New York apartment he maintained for business. However, in a factual context nearly identical to this case, the New York Court of Appeals declined to disturb the "factual determination" of the "courts below ... that defendant's dwelling place [an apartment she owned at the Sherry Netherland], where she stayed occasionally [twice a month] in connection with her business activities, was not a residence for purposes of CPLR 308 (subd. 2)." *Mangold v. Newman,* 57 N.Y.2d 627, 628, 454 N.Y.S.2d 58, 439 N.E.2d 867 (1982).

4. Defendants rely on *Loew's, Inc. v. Dorsey,* 197 Misc. 1069, 97 N.Y.S.2d 315 (1950), for the proposition that a defendant residing temporarily in a hotel room within the state cannot be said to reside without the state for the purposes of attachment. However, *Loew's* was later distinguished on the ground that "Dorsey had no permanent residence and his stay in a New York Hotel, though temporary, was his only place of abode at the time of the issuance of the attachment." *Rudes Corp. v. Farrad Sons, Ltd.,* 3 Misc.2d 861, 862, 157 N.Y.S.2d 44 (Mun.Ct.), *aff'd,* 3 Misc.2d 862, 157 N.Y.S.2d 1023 (Sup.Ct.App.Term 1956).

the purposes of § 6201(1). He stays in New York only sporadically or infrequently on business. *See Equitable Trust Co. v. Sala,* 102 Misc. at 430–32, 169 N.Y.S. 930; *Rudes Corp. v. Farid Sons, Ltd.,* 3 Misc.2d 861, 157 N.Y.S.2d 44 (Mun.Ct.), *aff'd* 3 Misc.2d 862, 157 N.Y.S.2d 1023 (Sup.Ct.App. Term 1956). He resides permanently in Atlanta with his wife and children. *Chaine v. Wilson,* 8 Ab. Prac. 78, 81 (Superior Ct.1858); *Lee v. Stanley,* 9 How.Pr. at 272, 277 (Sup.Ct.1854); *Houghton v. Ault,* 16 How.Pr. at 84. He involves himself in civic activities and fulfills his civic obligations in Atlanta and not in New York. *Houghton v. Ault,* 16 How.Pr. at 84. His purchase of a cooperative apartment at the Hotel Lombardy does not take this case outside of the rule of *Harshbarger v. Sherron,* 179 Misc. 1037, 40 N.Y.S.2d 651 (Sup.Ct.1943) (defendant with home and family in New Jersey who leased apartment in New York for "business convenience" held to reside "without the state" for purposes of statute requiring nonresidents to post security for costs). It does not appear that Menke ever "changed his 'place of abode'" from Atlanta to New York, and his business trips here were merely:

> in the nature of "temporary sojourn[s]" without the intent to make New York a "place of abode". The defendants' claim now of a residence in the State of New York seems nothing more than a mere after-thought seized upon solely for the purpose of avoiding the payment of the obligations involved in this action . . .

*Strater v. Strater,* 20 A.D.2d 889, 890, 248 N.Y.S.2d 945, *app. dismissed,* 14 N.Y.2d 874, 252 N.Y.S.2d 86, 200 N.E.2d 771 (1964).[5]

## IV. CONSTITUTIONAL CHALLENGES

We see no merit in defendants' constitutional arguments against an attachment here.

### A. Due Process

■ Defendants argue that a § 6201 attachment to secure a prospective judgment violates due process because it permits prejudgment seizure of property against which the plaintiff has no contractual lien. Defendants' sole support for this proposition is the Supreme Court's holding that whether the plaintiff has any present interest in the property aside from a desire to collect on a prospective money judgment is relevant to the amount of process due the defendant. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 604, 94 S.Ct. 1895, 1898, 40 L.Ed.2d 406 (1974). However, defendants make no claim that they were provided with insufficient process. After affording the parties an opportunity to be heard, the district court found that the plaintiff had made a showing of likely success on the merits. This finding, which is not disputed here, gave plaintiff a sufficient interest in defendants' assets to warrant a prejudgment attachment in the circumstances. *See Carey v. Sugar,* 425 U.S. 73, 78, 96 S.Ct. 1208, 1210, 47 L.Ed.2d 587 (1976) (per curiam) (declining to pass on constitutionality of New York's attachment statute where New York courts might construe statute so as to avoid constitutional infirmity by providing defendants a hearing on the merits of plaintiffs' claims).

■ Defendants' second due process claim is that the standard for determining

---

**5.** Defendants argue that Nelson Films is not a nondomiciliary residing without the state because it is a limited partnership established under New York law with its principle place of business in New York. However, under New York law a partnership has "no residence distinct from the residences of the partners." *Rait v. Jacobs,* 49 Misc.2d 903, 904, 268 N.Y.S.2d 750 (Sup.Ct.1966); *Bulkley v. O'Donnell,* 148 Misc. 186, 265 N.Y.S. 495, *aff'd,* 240 A.D. 929, 267 N.Y.S. 983 (1933); *see also Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 183–84 (2d Cir.1966) (for diversity purposes, citizenship of partnership is determined by citizenship of general partner), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

We also reject defendants' argument that Menke's personal assets may not be attached to secure the debt of Nelson Films. At least when the partnership has sufficient assets to meet its obligations, the partners are liable for the firm's debt and their property is subject to attachment. *Gomez v. Vasquez,* 177 Misc. 874, 876, 32 N.Y.S.2d 34 (City Ct. of New York 1941); *Faure v. Bigelow,* 191 Misc. 854, 78 N.Y.S.2d 904, 907 (Sup.Ct.1948); *Wisnouse v. Telsey,* 367 F.Supp. 855, 859 (S.D.N.Y.1973).

plaintiff's need for an attachment is "vague" and "undefined." However, we are troubled by no such uncertainty here. Plaintiffs seeking attachment under § 6201(1) must establish that the defendant is a "nondomiciliary residing without the state;" that the complaint states a cause of action against the defendant; that the plaintiff will probably succeed on the merits; that the plaintiff's demand exceeds defendants' counterclaims; and, if the defendant opposes the attachment, that there is a continuing need for the levy. Civ.Prac.L. §§ 6212(a) & 6223(a) (McKinney 1980). Given the fact-specific nature of the inquiry, greater precision cannot be expected. And neither the record here nor any case cited by defendants establishes the sort of abuse of these standards that would render illusory the procedural protections New York affords to nonresident defendants.

### B. *Privileges and Immunities*

 Section 6201 authorizes an attachment for security purposes against New York residents only upon a showing that the defendant is attempting fraudulently to conceal or dispose of his assets. No such showing is required of a plaintiff seeking an attachment against a defendant who is a nondomiciliary residing without the state. Defendants argue that there is no rational basis for this discrimination, and that the statute is therefore unconstitutional under the privileges and immunities clause. We do not agree.

Early in the history of the fourteenth amendment the Supreme Court upheld against a privileges and immunities and equal protection challenge a similar discrimination in the availability of attachments. *Central Loan & Trust Co. v. Campbell,* 173 U.S. 84, 97–99, 19 S.Ct. 346, 351–352, 43 L.Ed. 623 (1899). In any event, the New York attachment law passes muster under current privileges and immunities standards. The attachment statute seeks the valid, independent end of securing a plaintiff's apparently meritorious claim against a defendant who could escape New York enforcement procedures by disposing of his assets in the state and absenting himself from the state. The legislature has made the reasonable judgment that nondomiciliaries residing without the state present a "peculiar source of the evil at which the [discriminatory] statute is aimed." *Hicklin v. Orbeck,* 437 U.S. 518, 525–26, 98 S.Ct. 2482, 2487–2488, 57 L.Ed.2d 397 (1978) (quoting *Toomer v. Witsell,* 334 U.S. 385, 398, 68 S.Ct. 1156, 1163, 92 L.Ed. 1460 (1948)). Given the statutory requirements concerning plaintiffs' burden of proof and the courts' construction of the statute as concerned with the extent and permanence of nonresident defendants' connection to the state, we believe that there is a "reasonable relationship between the danger represented by noncitizens, as a class, and the . . . discrimination practiced upon them." *Id.* 437 U.S. at 526, 98 S.Ct. at 2487.

Reversed and remanded. The mandate shall issue forthwith.