**CARGILL, INCORPORATED,**
Plaintiff-Appellant,

v.

**SABINE TRADING & SHIPPING CO.,
INC. and George P. MacDonough,**
Defendants-Appellees.

No. 622, Docket 84–7932.

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1984.

Decided Feb. 21, 1985.

Robert J. Zapf, New York City (John F. O'Connell, Luanne Surace, and Burlingham, Underwood & Lord, New York City, on the brief), for plaintiff-appellant.

James J. Martin, Philadelphia, Pa. (Laurence T. Muri, and Walder, Martin & Kresman, Philadelphia, Pa., Albert, Pastore & Ward, New York City, on the brief), for defendants-appellees.

Before KAUFMAN, TIMBERS and ROSENN,* Circuit Judges.

TIMBERS, Circuit Judge:

This appeal presents the question of whether a state statute authorizing limited appearances in quasi in rem actions is ap-

* Of the Third Circuit, by designation.

plicable in a federal diversity action. We hold that it is and that the filing of an answer containing a counterclaim arising from the attachment of appellees' property does not subject appellees to full in personam jurisdiction.

The appeal is from an order entered in the Southern District of New York, John M. Cannella, *District Judge,* granting appellees' motion to vacate an order of attachment, denying appellant's motion for a preliminary injunction, and denying appellant's motion for the appointment of a receiver to marshal the assets of appellees. For the reasons stated below, we affirm in part and reverse and remand in part.

### I.

Appellant Cargill, Inc. ("Cargill") is a Delaware corporation with its principal place of business in New York. Appellee Sabine Trading & Shipping Co., Inc. ("Sabine") is a Texas corporation not qualified to do business in New York. Appellee George P. MacDonough is a domiciliary of Texas and is alleged to be the "alter ego" of Sabine. The jurisdiction of the district court is based upon diversity of citizenship. We shall briefly summarize only those facts believed necessary to an understanding of our rulings on this appeal.

In November and December 1981, Cargill and Sabine entered into a contract whereby Cargill would sell and Sabine would buy 10,000 metric tons of rice for $5,180,810. Sabine thereafter contracted with T.J. Stevenson & Co. ("Stevenson") to ship the rice to Warri, Nigeria. Delays in shipping and payment followed, caused in part by restrictions imposed in April 1982 by the Nigerian government on currency conversions.

The parties and Stevenson entered into a new contract on April 23, 1982. This new contract required Sabine to pay Cargill $5,362,370 and $90,000 representing the purchase price of the rice and $271,560 in interest, to pay Stevenson $895,000 and $90,000 for shipment, to establish an escrow account in amount of $636,296.95 for the benefit of all parties, and to pay daily interest into the account at an annual rate of 17%. Sabine also agreed to submit Stevenson's $450,000 demurrage claim to arbitration.

In its complaint, Cargill alleged that Sabine and MacDonough breached the April 23, 1982 agreement by failing to establish the escrow account and by failing to pay interest accruing after April 30, 1982. Cargill also alleged that a $90,000 balance of interest on the purchase price was still owing. Cargill sought $2.5 million in damages plus interest.

On December 19, 1983, the same day that it filed its complaint, Cargill moved in the district court for an ex parte order of attachment. Judge Richard Owen ordered the attachment against appellees' property in amount of $2.5 million. Cargill filed an undertaking of $250,000. Levy was made on December 20, 1983 when the order of attachment was served on appellees' bank, the First Chicago International Banking Corp., in New York City.

Appellees pleaded a number of defenses in their answer, including the allegation that an escrow account had been established in Nigeria in an amount equivalent to U.S. $90,000 for eventual transfer to Cargill. They further alleged that, despite their "best efforts", they had been unable to effectuate a conversion of this amount into U.S. currency as a result of the aforementioned Nigerian governmental restrictions. Appellees also asserted a counterclaim against Cargill arising from the "unjustified" attachment of their funds in New York. They sought $1 million in damages.

On January 24, 1984, appellant moved in the district court, before Judge Cannella, for leave to prove the grounds for the attachment. Appellees filed a cross-motion to vacate the attachment. Judge Cannella entered an order on May 21, 1984 confirming the attachment and denying appellees' motion to vacate it.

Appellant thereafter moved pursuant to Fed.R.Civ.P. 64 and 65 for a preliminary injunction, seeking to enjoin appellees from transferring or encumbering "any real or

personal property the title of which, in whole or in part, is held by [appellees]". At the same time, appellant moved for the appointment of a receiver to marshal the assets of appellees. Oral argument was heard on May 25, 1984 before Judge Cannella. On November 1, 1984, the court entered an order denying the injunction and the appointment of a receiver and vacating the attachment. The order vacating the attachment was stayed by the district court pending this expedited appeal.

## II.

We turn first to the claim by appellant that the district court abused its discretion in vacating the order of attachment. Our analysis is two-pronged: First, whether, in a diversity action, federal courts must apply a state statute that permits a defendant in a quasi in rem action to appear in court to defend its property without submitting to in personam jurisdiction. Second, whether the assertion of a counterclaim arising from an attachment in a quasi in rem action results in the court obtaining in personam jurisdiction. Appellant concedes that no other colorable basis for the exercise of in personam jurisdiction over appellees exists. Thus, our rulings on these issues will determine whether appellees have "appeared" and thus submitted themselves to the full power of the court; and whether, alternatively, the order of attachment provided the only basis for personal jurisdiction over appellees and whether the district court thus abused its discretion in dissolving it.

Under Fed.R.Civ.P. 64, the provisional remedy of an attachment is available in a federal court, subject to qualifications not applicable here, "under the circumstances and in the manner provided by the law of the state in which the district court is held". *Id.; Brastex Corp. v. Allen International, Inc.*, 702 F.2d 326, 327, 330 (2

Cir.1983). Attachments for the purpose of obtaining jurisdiction over a defendant also are governed by state law in federal diversity actions under Fed.R.Civ.P. 4(e). *ITC Entertainment, Ltd. v. Nelson Film Partners*, 714 F.2d 217, 220 (2 Cir.1983). New York law on the subject provides that an attachment is available in an action for a money judgment when, among other bases, "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state". New York CPLR § 6201(1) (McKinney 1980). Although attachment is permitted under CPLR § 6201(1) primarily to afford quasi in rem jurisdiction over a nonresident defendant, McLaughlin, Practice Commentaries, CPLR § 6201(1), at 12 (McKinney 1980), the section also serves the independent purpose of providing security for a potential judgment against a nonresident. *ITC Entertainment, supra,* 714 F.2d at 220.

The district court confirmed the attachment under § 6201, holding that it served the dual purposes of obtaining jurisdiction and providing security. (May 21, 1984 order at 4). Although personal jurisdiction initially was premised solely on the attachment of appellees' property, appellant's counsel subsequently argued before the district court, on the motion for an injunction and the appointment of a receiver, that the court had obtained in personam jurisdiction over appellees by virtue of the fact that they "appeared and answered". (Transcript at 18). The court relied on this representation and stated that appellant "conceded that the Court had acquired personal jurisdiction over both defendants." (November 1, 1984 order at 3).[1] The court concluded that the attachment therefore was unnecessary for jurisdictional purposes. We disagree.

Under New York CPLR § 320(c)(1), an "appearance", which includes the filing of an answer, "is not equivalent to personal

---

1. We assume, from the context of its statement, that the court was referring to in personam jurisdiction. Appellees consistently have maintained, as they did at oral argument before us, that the district court lacked in personam juris-diction over them and that, if the order vacating the attachment were upheld, the action must be dismissed. At no time have *appellees* conceded jurisdiction.

service upon the defendant ... if jurisdiction is based solely upon a levy on defendant's property within the state pursuant to an order of attachment". Section 320 sanctions the use of a "limited" appearance and permits the defendant in a quasi in rem action to answer and to protect his interest in the attached property without submitting to full in personam jurisdiction and risking a personal judgment. *Gager v. White*, 53 N.Y.2d 475, 487–88 & n. 10, 442 N.Y.S.2d 463, 468–69 & n. 10, 425 N.E.2d 851, 856 & n. 10 (1981); *National Am. Corp. v. Federal Rep. of Nigeria*, 425 F.Supp. 1365, 1368 n. 3 (S.D.N.Y.1977); McLaughlin, Practice Commentaries, CPLR § 320(c), at 373–74 (McKinney 1972); *see Dempsey & Spring, P.C. v. Ramsay*, 79 A.D.2d 1017, 1018, 435 N.Y.S.2d 336, 338 (2d Dep't 1981).

▮▮▮ The amenability of a defendant to personal jurisdiction is governed by state law in a diversity case. *E.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 (1982) (Powell, J., concurring); *Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017, 1020 (2 Cir.1978); *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2 Cir.1963). While § 320(c) does not

govern amenability to service of process, it is a self-imposed limitation on the power of the state to exercise complete jurisdiction over a defendant. It thus restricts a defendant's amenability to in personam jurisdiction. To adopt for use in a federal court the state's procedures for obtaining quasi in rem jurisdiction [2] while, at the same time, denying the applicability of the state's limited appearance statute would vest greater power over a defendant in the federal court in a diversity case than that enjoyed by a state court in the same forum, thus defeating the principles enunciated in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). 4 Wright & Miller, Federal Practice & Procedure § 1121, at 501, § 1123, at 514–15 (1970 & Supp.1984); *see Minichiello v. Rosenberg*, 410 F.2d 106 (2 Cir.1968), *aff'd on reh'g en banc*, 410 F.2d 117, *cert. denied*, 396 U.S. 844 (1969); *National Am. Corp., supra*, 425 F.Supp. at 1368 n. 3; *U.S. Industries, Inc. v. Gregg*, 58 F.R.D. 469, 474–76 (D.Del.1973).

▮▮▮ Although the drafters of Fed.R. Civ.P. 4(e) [3] declined to create a federal limited appearance statute, they left open the question of whether state statutes would apply. 4 Wright & Miller, *supra*,

---

**2.** Federal law of course controls on the issue of whether the exercise of quasi in rem jurisdiction over a defendant violates the due process clause of the United States Constitution. *Shaffer v. Heitner*, 433 U.S. 186, 212 (1977). Any such exercise of jurisdiction must meet the "minimum contacts" standards set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. *Shaffer, supra*, 433 U.S. at 212. Where, however, state or federal substantive law provides a basis for an objection to jurisdiction, that objection must be made pursuant to the procedural requirements of Fed. R.Civ.P. 12 or it is forever waived. *E.g., Harris Corp. v. National Iranian Radio & Television*, 691 F.2d 1344, 1351 (11 Cir.1982); *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6 Cir. 1978). By failing to raise the issue in their answer, appellees here have waived any objection to the exercise of quasi in rem jurisdiction they may have had.

**3.** Fed.R.Civ.P. 4(e) in relevant part provides:
   "**Rule 4. Process**
   . . . .
   **(e) Summons: Service Upon Party Not Inhabitant of or Found Within State.**
   . . . .

Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made *under the circumstances* and in the manner prescribed in the statute or rule." (emphasis added).
This Rule was intended to rectify the "historical anomaly" that obtained prior to the amendment whereby quasi in rem actions could be commenced in a state court and then removed to a federal court but could not be brought directly. Advisory Committee Note, Rule 4(e), 1963 Amendment. The requirement that service be made "under the circumstances" as well as "in the manner prescribed" by state law suggests that *all* state provisions regarding attachment must be followed in the federal court. *See* 4 Wright & Miller, *supra*, § 1121, at 500–01.

§ 1123, at 511, 514. We conclude that § 320(c) is properly applicable in federal courts sitting in New York in diversity actions and that appellees have not submitted to in personam jurisdiction by answering.

We turn next to the issue of whether the assertion of a counterclaim in the answer subjected appellees to in personam jurisdiction. First, federal law on this issue appears to be in disarray. *Merz v. Hemmerle*, 90 F.R.D. 566, 569 (E.D.N.Y. 1981); 5 Wright & Miller, Federal Practice & Procedure § 1397 (1969 & Supp.1984). Fed.R.Civ.P. 12(h),[4] which controls on the issues of waiver of defenses, is silent on the point. 5 Wright & Miller, *supra*, § 1397, at 876. The Rule, however, is not inclusive of all means by which objections to personal jurisdiction can be waived. *Insurance Corp. of Ireland, supra*, 456 U.S. at 703–05. Here, appellees' counterclaim is based solely on damages that they allegedly have incurred through the attachment of their assets in the United States. It does not arise from the transaction that is the subject of appellant's claim but, rather, from the method by which appellant obtained jurisdiction. Under these circumstances, appellees have not destroyed the essentially quasi in rem nature of the action and cannot be said to have consented to complete jurisdiction under general waiver principles. *Cf. Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9 Cir.1967).

Second, state law on attachments would permit such a counterclaim without subjecting the defendant to in personam jurisdiction. *Calloway v. National Services Indus.*, 93 A.D.2d 734, 735, 461 N.Y.S.2d 280, 282 (1st Dep't), *aff'd*, 60 N.Y.2d 1260, 470 N.Y.S.2d 583, 458 N.E.2d 1260 (1983). Where there is no contrary federal rule, it is appropriate to apply state procedure in diversity cases. *Insurance Corp. of Ireland, supra*, 456 U.S. at 711 (Powell, J., concurring); *Hanna v. Plumer*, 380 U.S. 460, 470 (1965); *but see Neifeld v. Steinberg*, 438 F.2d 423, 426 (3 Cir.1971) (Rule 12 was intended to "occupy the field" with regard to waiver of defenses). We therefore conclude that, whether federal or state law is applied, appellees have not consented to in personam jurisdiction.

The applicability of Fed.R. Civ.P. 13(a)(2)[5] does not alter this analysis. Clause (2) was added in 1963 and "appl[ies] to various cases described in Rule 4(e), as amended, where service is effected through attachment or other process by which the court does not acquire jurisdiction to render a personal judgment against the defendant." Fed.R.Civ.P. 13(a), Notes of Advisory Committee on Rules, 1963 Amendment. Rule 13(a)(2) was intended to allow defendants in a quasi in rem action to refrain from asserting what otherwise would be a compulsory counterclaim if it would subject them to in personam jurisdiction. 3 Moore, *supra*, ¶ 13.14[4], at 13–94; 4 Wright & Miller, *supra*, § 1121, at 504–05. Rule 13(a), however, does not *deter-*

---

**4.** Fed.R.Civ.P. 12(h)(1) in relevant part provides: "**Rule 12. Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on the Pleadings** . . . .

(h) **Waiver or Preservation of Certain Defenses.**

(1) A defense of lack of jurisdiction over the person . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."

**5.** Fed.R.Civ.P. 13(a)(2) in relevant part provides: "**Rule 13. Counterclaim and Cross-Claim**

(a) **Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if . . . (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

*mine* whether the assertion of a counter-claim results in the court obtaining in personam jurisdiction. *Dragor, supra,* 378 F.2d at 244.

■ We hold that the district court lacked in personam jurisdiction over appellees. The attachment therefore was necessary to establish and maintain quasi in rem jurisdiction. Accordingly, we reverse that part of the order vacating the attachment. Since, under New York law, an attachment for purposes of obtaining jurisdiction is valid even absent the need to provide adequate security, *ITC Entertainment, supra,* 714 F.2d at 217; *Unitech USA, Inc. v. Ponsoldt,* 91 A.D.2d 903, 905, 457 N.Y.S.2d 526, 528 (1st Dep't 1983), it is unnecessary for us to address appellant's arguments on the issue of security.

### III.

This brings us to appellant's claim that the district court erred in denying its motion for a preliminary injunction and for the appointment of a receiver to marshal the assets. Having held that the district court lacked in personam jurisdiction over appellees, we affirm that portion of the district court order.

To summarize: We hold that state limited appearance statutes are applicable in federal diversity cases in which only quasi in rem jurisdiction has been obtained against the defendant. We also hold that the assertion of a counterclaim that arises from damages alleged to have been caused by an attachment to obtain jurisdiction does not subject the defendant to full in personam jurisdiction. We do not reach the issue, because it is not presented here, of whether it is constitutionally permissible, under current interpretations of the due process clause, to force a defendant in a quasi in rem action to choose between defending his property and risking a personal judgment where a limited appearance is not available.

We also recognize the limited application of our holdings today. In most, if not all, cases in which quasi in rem jurisdiction is permissible, the defendant will also be sub-ject to in personam jurisdiction. *Intermeat, Inc., supra,* 575 F.2d at 1023. The issue will arise mainly where, as here, only quasi in rem jurisdiction has been asserted and the defendant has waived his objections to such jurisdiction. *Gager, supra,* 53 N.Y.2d at 488–89, 442 N.Y.S.2d at 468–69, 425 N.E.2d at 856–57; *Unitech, supra,* 91 A.D.2d at 905, 457 N.Y.S.2d at 529.

Affirmed in part; reversed and remanded in part.